By the Court. Woodruff, J.
The plaintiffs herein, by their complaint, allege the drawing of sundry bills of exchange in the State of Ohio, by various drawers; the discounting of such bills by the plaintiffs in regular course of business, whereby they became the lawful holders' and owners thereof; the endorsement of the said bills by them to the Ohio Life and Trust Company for collection, and the transmission thereof to the said company at New York, for that purpose only; the transfer and delivery of the bills to the defendants in this suit by the said company unlawfully, without authority, and in violation of its duty, and as collateral security for a precedent usurious indebtedness owing by the company to the defendants; that the Trust Company had no authority to transfer the bills; that the defendants took them, chargeable with knowledge, that the same were the property of the plaintiffs, and that the Trust Company had no authority so to transfer or deliver the same; the retention of the bills by the defendants; a demand of the same from the defendants by the plaintiffs, and a refusal to deliver them: *698 and the plaintiffs thereupon demand judgment for the value of the bills, with interest from the maturity thereof respectively.
That portion of the defendants’ answer which is demurred to, and which is stated, fifthly, as a “separate defence,” sets forth with greater particularity the drawing of the bills, the terms thereof, and their delivery to the plaintiffs, the endorsement and delivery thereof by the plaintiffs to the Ohio Life Insurance and Trust Company, and the endorsement and delivery thereof by that company for value, to the defendants, averring, that the defendants then became, and now are, the legal owners and holders thereof.
The answer then avers the demand of payment, refusal, protest, and notice to the plaintiffs as endorsers, and claims thereupon to have judgment against the plaintiffs for the amount thereof.
The plaintiffs’ demurrer assigns for cause, that this part of the - answer does not state facts sufficient to constitute either a defence or a counter-claim.
If we are to consider this fifth and separate defence as it is pleaded, viz., as a separate defence to the action, and judge of its sufficiency as an-answer to the complaint, it is material to notice, that it does not contain any denial that the transfer by the Ohio Life and Trust Company to the defendants was without authority; that the bills were held by that company for collection only; that the transfer was in violation of the duty of that company to the plaintiffs; that the' defendants took, them chargeable with knowledge that the same were the property of the plaintiffs, and that the company had no authority so to transfer them; and, especially, that the bills were transferred to the defendants by the company as a collateral security for a precedent usurious indebtedness.
It is quite obvious, that if these bills were transferred to the defendants, in fraud of the rights of the true owners, (the plaintiffs,) and only to secure an antecedent debt, the defendants are not entitled tb retain them as against the plaintiffs, nor can they make a title, so acquired, the foundation of any claim to recover the amount thereof from the plaintiffs, under the endorsement by the latter.
And it is equally clear, that if the bills were so transferred in *699 fraud of the plaintiffs’ rights, but to secure to the defendants a usurious demand claimed by them of the Trust Company, the defendants have no title to retain them from the plaintiffs, nor to found a counter-claim thereon.
And so, if the averment, that they took them chargeable with, knowledge that the same were the property of the plaintiffs, and that the Trust Company had no authority to transfer them, may be regarded as a statement of a fact, then their title to retain the bills, and their title to set them up as a counter-claim equally fail.
The answer, in this case, it is true, contains a denial of the allegations of the said complaint, and each and every of the said allegations. This is the “ first” defence set up in the answer. If this may be referred to, and be made to spell out the fifth defence, then it is not true, that the allegations above referred to are not denied. But it is equally true, that if, in determining the sufficiency of the fifth defence, we are to take the first defence to be true, then the defendants have no title—for the counter-claim rests upon the very same transfer to the defendants which the complaint alleges, and which this first defence denies; and if no such transfers were made, or if no such bills were drawn as the' complaint alleges, then,'whether the plaintiffs have any title to recover or not, it is clear, that the defendants have no counterclaim.
This palpable conflict of allegations, if it shows nothing else, illustrates the impropriety and inconsistency of attempting to sustain one defence pleaded separately, by incorporating therein another distinct defence, containing averments partly consistent and partly inconsistent therewith, and which, if taken to be wholly true, would destroy the defence sought to be aided.
Other considerations, however, which seem to us to be quite conclusive, forbid the attempt thus to bolster up a defence separately pleaded, and affirm the true rule to be, that each defence so separately pleaded, must be in itself complete, and must contain all that is necessary to answer the whole cause of action—or to answer that part thereof which it purports to answer.
Section 150 of the Code permits a defendant to set forth, by answer, as many defences and counter-claims as he may have, whether legal, or equitable, or both. They must each be separately stated, and refer to the causes of action which they are in *700 tended to answer, in such manner that they may be intelligibly distinguished.
This language, of itself, imports, that when more than one defence or counter-claim is interposed, each must be a sufficient defence or counter-claim, to answer that cause of action to which it is addressed; or, where the cause of action can be divided, then to answer a part thereof. The provision in this respect, is even more explicit and guarded than the similar language in the Revised Statutes, which permitted “ the defendant in any action, to plead as many several matters as he shall think necessary for his defence.” (2 Rev. Stat. 352, [§ 9,] 27.)
The requirement to state them separately, imports that these separate statements are not to be parts of a defence. Unless they are legally complete and sufficient, they are not defences— and if it is necessary to their completeness, to refer to, and include part of what is alleged as another distinct defence, then they are not separately stated.
This is made still more clear by section 153, which permits the plaintiff to "demur to one or more of such defences or counterclaims, and reply to the residue of the counter-claims.” The reason for requiring a separate statement of each defence or counter-claim here becomes apparent. It is not merely, that the pleading may be thereby presented in an orderly form, and be more intelligible, but that the plaintiff may address his demurrer specifically to any one of the separate statements set up as such defence or counter-claim, and allege its insufficiency.
It is unnecessary to do more than refer to the familiar .rule under our former system, that required each plea to be complete in itself, and to constitute a complete defence to the allegations to which it was addressed. (1 Chit. Pl 511; Nevins v. Keeler, 6 J. R. 63 ; Spencer v. Southwick, 11 J. R. 593; Hallett v. Holmes, 18 J. R. 28; Van Ness v. Hamilton, 19 J. R. 349.) The same reasqn now exists; and there is nothing in the language of the Code indicating that the rule is now relaxed, but as already intimated, the contrary is plainly involved in the provisions of the Code itself.
How far it may be competent for a defendant, for the purpose of avoiding repetition, to aver once for all, certain facts alike applicable to each of several defences or counter-claims, and having *701 averred them, either in. one of his distinct and separate statements of a defence, etc. or by way of introduction to all, to thereafter, in his subsequent separate statements, refer intelligibly and distinctly to them, so as by reference to clearly include them in each, it is unnecessary to consider—no such attempt is made in the present case.
These views inevitably lead to the conclusion that the fifth “separate defence” here demurred to is insufficient. It contains no denials of the allegations in the complaint above enumerated, nor any averments inconsistent therewith. These allegations must, therefore, for the purposes of this demurrer, be taken as admitted.
We are not unmindful of the circumstance that the arguments addressed to us in support of the demurrer upon this appeal did not embrace the objections to the answer which have thus far been considered; and the suggestion may naturally arise, that the Court are not called upon to seek out defects in the answer to which counsel have not called their attention. This may sometimes be so, where the objections relate to matters which are formal merely, or which would be cured by a trial and verdict upon the very right of the matter. But we are not willing in this cause to enter a deliberate judgment, which on the record, pronounces this defence a sufficient defence, when "we are clear that it is wholly defective and insufficient. Indeed, it is very far from clear that by so doing we should not injure the very party in whose favor we should so pronounce judgment; for should that judgment become the subject of review in the court of last resort, it must, we think, be pronounced erroneous, and be reversed. And we do not see how that Court could be informed what arguments were urged here, or that we did not decide, on all grounds, that the defence was sufficiently pleaded.
The reasons given are therefore decisive of the present appeal, and we might dismiss the subject without disposing of the question actually argued; but the parties have come to the discussion of this appeal for the purpose of testing the defendants’ right to set up the matters contained in this answer as a counter-claim. There is little doubt that the defendants will amend the answer by inserting in the fifth defence the matters of denial, which are already contained in other parts of the answer, and which, if *702 inserted in the fifth defence, would relieve it from the objections which have been noticed. And if we refrain from the expression of an opinion upon the main question, we probably only put the " parties to the expense and delay of coming here again, upon a fresh demurrer and new appeal, to argue again the very question already fully and ably argued on this occasion. Under such circumstances, we think they are now entitled to our views upon that question.
Indeed, if we have considered that question, and are of opinion that such a counter-claim is not to be allowed, it may be pertinently asked, why should the Court consider, at all, the defects in the answer which have above been pointed out ?
The great question in controversy then-,, is, in an action, in the nature of trover, by a plaintiff who 'has endorsed notes or bills of exchange, brought to recover the value thereof, from a defendant in whose possession they are, and who claims title thereto through the plaintiff’s endorsement, can the defendant set up title in himself, demand of payment, protest, and notice, and ask, by way of counter-claim, a judgment against the plaintiff as endorser?
By § 150 of the Code, subd. 1 and 2, the counter-claim which the defendant may set up in his answer may be 1st, “a cause of action' arising out of the contract or transaction set forth in the complaint, as the foundation of the plaintiff’s claim, or connected with the subject of the actionand 2d, “ in an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action.”
This division of the section shows that there may be a counterclaim when the action itself does not arise on contract—for the second clause is expressly confined to actions arising upon contract, -and allows a counter-claim in such cases of any other cause of action, also arising on contract; and this may embrace, probably, all cases heretofore denominated “set off,” legal or equitable, and any other legal or equitable demand, liquidated or unliquidated, whether within the proper definition of set off or not, if it arise on contract. (Gleason v. Moen, 2 Duer, 642.)
The first sub-division would therefore be unmeaning, as a separate definition, if it neither contemplated cases in which the action was not brought on the contract itself, in the sense in *703 which, those words are ordinarily used, nor counter-claims which did not themselves arise on contract.
This first subdivision, by its terms, assumes that the plaintiff's complaint may set. forth as the foundation of the action, a “ contract,” or a “transaction.”
The legislature, in using both words, must be assumed to have designed that each should have a meaning; and in our judgment, their construction should be according to the natural and ordinary signification of the terms.
In this sense, every contract may be said to be a transaction; but every transaction is not a contract.
Again, the second sub-division having provided for all counterclaims arising on contract, in all actions arising on contract, no cases can be supposed, to which the first sub-division can be applied, unless it be one of three classes, viz:
1st. In actions, in which a contract is stated as the foundation of the plaintiff’s claim, counter-claims, which arise out of the same contract, or—
2d. In actions in which some transaction, not being a contract, is set forth as the foundation of the plaintiff’s claim, counterclaims, which arise out of the same transaction, or—
3d. In actions, in which either a contract, or a transaction which is not a contract, is set forth as the foundation of the plaintiff’s claim, counter-claims, which neither arise out of the same contract, nor out of the same transaction, but which are connected with the subject of the action.
Whether this analysis of the first sub-division makes its import more clear, or will aid in its application to particular cases, we will not affirm; but we think it is plainly a true distribution .of the language of the section, and a necessary reading of the sub-division, if all its terms are to have any meaning.
1st. What, then, is meant by the clause, which “ in actions in which a contract is set forth in the complaint, as the foundation of the plaintiff’s claim, permits the defendant to counter-claim a cause of action arising out of the same contract.”
At the first view, this would seem to provide for a case also covered by the second sub-division.’ But a moment’s reflection suggests, that we had, when the Code was enacted, been familiar with a class of actions in which, though a contract was the sub *704 stantial foundation of the plaintiff’s claim, the action was not brought on the contract, but on the duty which the law created. Actions, which were formerly called ex delicto quasi ex contractu, were of this class: e. g. actions on the case against common,carriers, or against inn-keepers, in which the plaintiff might declare, on the contract, in the form of assumpsit, or on the duty, in the form of case ex delicto.
And other actions on the case may, perhaps, furnish examples that would illustrate what is meant by the clause above recited: e. g. an action on the case for a false warranty—a form of action formerly used instead of declaring on the warranty as a contract.
In these and similar cases, it may not be altogether inaccurate to say, that a contract may be the foundation of the plaintiff’s claim, although the action does not arise on the contract.
And in all such cases, a counter-claim, whether it be a cause of action legal or equitable, arising out of the same contract, may be set up by the defendant.
2d. But, secondly, the subdivision authorizes, in actions in which a transaction, not being a contract, is set forth as the foundation of the plaintiffs’ claim, counter-claims which arise out of the same transaction. This, we think, includes the case before us. What other legal or equitable counter-claims it also includes, it is unnecessary now to inquire.
The “ transaction” here in question, may either include the history of the bills of exchange in question, so far as the title of the plaintiffs or defendants depends upon that history, or the “ transaction” may, perhaps, be confined to the manner and circumstances of the transfer to the defendants.
In the first view of the meaning of that word, “the transaction set forth in this complaint as the foundation of the plaintiffs’ claim,” consists of those facts which are alleged as showing the plaintiffs’ title to the bills; their delivery by the plaintiffs for a special purpose, to the Trust Company; the transfer by the Trust Company to the defendants; and their assertion of right to detain, or their actual detention thereof.
All these concur to establish the defendants’ counter-claim, and are an essential part thereof. In a just sense, the counter-claim arises out of them.
The difference between the parties consists, not in a denial by *705 the defendants that the transaction relied upon by the plaintiffs took place; but both admit, and in fact assert, that it occurred. One of the parties connects with it certain particulars, which, if established, establish the plaintiffs’ right to recover the bills or their value. The other connects with the transaction certain other particulars, which, if established, not only refute the plaintiffs’ claim, but establish the defendants’ right to recover from the plaintiffs the amount of the bills.
The parties differ about the accessory facts only, and when upon the trial, the very truth of the matter is ascertained, the actual transaction (which the plaintiffs set forth as the foundation of their claim, and which the defendants set forth as that out of which their claim arises,) will be developed, and one or the other will be seen to be, by reason of that transaction, entitled.
The transaction is then single and entire, and it is either a just foundation of the plaintiffs’ claim, or it entitles the defendants to what they claim from the plaintiffs.
The particulars about which the parties now differ, modify the legal effect which the leading facts will have upon the rights of the parties, and point the transaction favorably to the one or to the other. Some facts enter into the plaintiffs’ case, which, of course, do not enter into the defendants’ case, and vice versa. But from the nature of the subject, this must always be so. The Legislature were not so absurd as to mean that the defendant might counter-claim, when the very facts alleged by him, with all their particulars, were identical with those alleged by the plaintiff. For if to constitute his counter-claim, no other facts or particulars were necessary than the plaintiff had himself stated, there would be no occasion for the defendant to answer at all. He should go to trial on the complaint itself.
If, therefore, the transaction set forth in the complaint of the plaintiffs as the foundation of the plaintiffs’ claim be here regarded as embracing the history of the bills, their drawing, transfer to the plaintiffs, their endorsement to the Trust Company, and the transfer by the latter to the defendants, then the defendants’ counter-claim arises out of the same transaction. Each party, however, insisting upon certain accessory facts or particulars which make the transaction create a right in the one or the other, as the case may be. And when the actual transaction finally ap *706 pears, then it will he certain that this same transaction is either a legal foundation for the plaintiffs’ claim, or out of it arises a cause of action in favor of the defendants against the plaintiffs.
So, if the transaction set forth as the foundation of the plaintiffs’ claim, be regarded as more narrow, and as being the transfer of the bills by the Trust Company to the defendants, then, as before, the defendants’ counter-claim arises out of the same transaction, to wit, that transfer.
The circumstance, that the defendants have to superadd an allégation of demand, protest, and notice to the plaintiffs, as endorsers, does not alter the case. This added fact is only a means of showing how the defendants’ cause of action arises out of the transaction relied upon, and is made complete or consummate.
3d. If it were more doubtful than it seems to us to be, that the counter-claim in this case arises out of the same transaction on which the plaintiffs’ claim is founded, we should still think it clear that the defendants’ counter-claim might be set up. The third clause in the analysis above made of the first sub-division of the 150th section of the code, very clearly allows it.
The present is a case in which the counter-claim is directly and immediately “ connected with the subject of the action.”
The subject of the action is either the right to the possession of the bills of exchange in controversy, or it is the bills of exchange themselves. The defendants’ counter-claim is not only connected with, but is inseparable from either or both.
The object of the action is damages; but the subject is, the bills of exchange, or the right to their possession. If the plaintiffs show themselves -entitled to these bills, they must recover damages. If the defendants show themselves entitled, then they are in a condition to assert their right to have the amount thereof from the plaintiffs. The plaintiffs’ claim and the defendants’ counter-claim, are, then, connected with the subject matter which is to be enquired into in this action, and the investigation of the subject will determine whether the plaintiffs are entitled to the bills, or to their value as damages; or, the defendants are entitled to hold them, with recourse to the plaintiffs as endorsers.
And this suggests the propriety.and wisdom of the provision of the code under consideration, and the reason which induced its enactment. After the question upon which the right of the *707 plaintiffs to have these bills of exchange, has been fully investigated and determined in favor of the defendants, there would seem no sensible reason for turning the defendants over to a new suit to recover against these plaintiffs, as endorsers, with all the additional expense and delay which such new action might involve, and in which, also, the title of these defendants might be again put in issue.
It is plausibly argued, that the counter-claims provided for in the first subdivision of section 150, embrace only what was formerly called ‘ recoupment,’ and that recoupment implied an admission of the plaintiffs’ claim, and sought an abatement therefrom, either to the extinguishment of a part or the whole thereof. Such was no doubt the character of recoupment; it implied that the plaintiffs’ claim was to be allowed, but that another cause of action was to be satisfied out of it. (Nichols v. Dusenbury, 2 Com. 286; Vasseur v. Livingston, 3 Kern. 257; Batterman v. Pierce, 3 Hill, 171.)
But now the definition of counter claim must be considered in connection with section 274 of the code, which authorizes the Court, in the same action, to grant to the defendant any affirmative relief to which he may be entitled.
This opens to the defendant the full right to assert his claim to any relief, legal or equitable, to which upon the facts alleged in his answer he would be entitled had he prosecuted his cross action.
It permits the defendant, therefore, to set up in answer to an action on a note or bond, facts which show not only that he ought not to be required to pay the note or bond sued upon, but that the note or bond ought to be given up to be cancelled; or, in the language of Mr. Js. Bosworth, in Gleason v. Moen, (2 Duer, 642,) it permits the defendant to ask any equitable relief to which he is entitled against a legal demand which formerly could only be had by filing a bill in Chancery; and also the affirmative relief which, in equity suits, could be had only by a cross bill. And for the same reason it must be held to permit the defendant to have relief, in its nature strictly legal, if it arises out of the very matter or subject which the plaintiffs claim brings under investigation. (Ogden v. Coddington, 2 E. D. Smith, p. 326-7.)
Again, the right of the plaintiff to claim, and the right of the *708 defendant to counter-claim, upon any given or supposed facts in controversy, must, we think, be reciprocal.
Kow, suppose the defendants were plaintiffs, setting up their title to the bills of exchange in question, and claiming to recover the amount of these bills from the Xenia Bank, (the present plaintiffs,) as endorsers. It could not for a moment be doubted that the then defendants (the present plaintiffs) could under this same first sub-division of the 150th section, set up in answer the very facts which they have in this complaint alleged and pray as " a counter-claim, that these bills be delivered up to them as their own property. Their claim would arise out of the same transaction, and would be connected with the subject of the action.
It seems to us to follow inevitably, that the principle is the same when, as now, the Xenia Bank are prosecuting the defendants. In either case there is one controversy involving the same transaction, and the rights which arise out of that transaction— one contest relating to and connected with the same subject— and it may properly determine the whole right of the parties reciprocally. And we think that it was the intention of the Legislature to permit such settlement of the whole matter in dispute, in one action.
We are, therefore, constrained to say, that whatever doubts have been heretofore expressed upon the question, whether a defendant could set up, as a counter-claim, a cause of action at law, which could not before the Code have been set up in his plea by way of recoupment, those doubts are not warranted.
Our conclusion is, therefore, upon the question which alone was argued upon this appeal, that the defendant was at liberty to set up as a counter-claim, the liability of these plaintiffs as endorsers of the bills of exchange in question, and his title to recover against them as such endorsers.
But for the reasons first above stated, the defence herein demurred to is defective and insufficient, and upon that ground the order appealed from must be reversed, and the demurrer be sustained, with costs of the demurrer at Special Term, to the plaintiffs, to abide the event of the suit, but with leave to the defendants to amend within twenty days—and without costs on this appeal to either party.
Ordered accordingly.