PRENTISS, President of the Bank of Cooperstown, *vs.* GRAVES and RHINES.

Where, in an action against the indorsers of a promissory note, the answer averred that the indorsements were made for the accommodation of the maker, and upon the express condition that the note should not be used or negotiated, except to pay and discharge a certain draft of the same amount as the note, which was then due and owing from the maker to the plaintiff, of which condition the plaintiff had notice; and that the note was afterwards delivered to the plaintiff without the knowledge or assent of the indorsers, and without any consideration in fact therefor, and was received by the plaintiff merely as collateral security for the payment of the draft, and not in payment and discharge thereof; and prayed, as affirmative relief, that the names of the indorsers be canceled from the note, and the plaintiff be enjoined from taking any further or other measures for the collection thereof against the indorsers ; *Held* that these allegations were not new matter constituting a counter-claim, and no reply thereto was necessary.
*Held further,* that these facts constituted a *complete defense* at law, to an action on the indorsements.
The holder of negotiable paper, who has received it as security for an antecedent debt, without parting with any new consideration, or relinquishing any security therefor, cannot enforce the same against an indorser who in-

dorsed the same on a condition which has not been fulfilled; although the holder had no notice of any such condition, at the time of the transfer.

Where the condition of an indorsement of a promissory note was, that the note should be applied only to *pay and discharge* a certain draft, due and owing from the maker of the note; *Held* that the condition had not been fulfilled, where the maker transferred the note without the knowledge or assent of the indorser, to the holder of the draft, as *collateral security* for the payment of the draft, and the draft itself was retained against the maker of the note, and was afterwards sued.

THIS action was brought against the defendants as indorsers of a promissory note. The complaint was in the form usual against indorsers. The defendants answered separately, and alleged that each of them indorsed the note as a surety, in fact with the understanding and on the condition that such indorsement should be of no effect, and that the note should not be negotiated or passed off for any purpose except to pay, satisfy and discharge a certain draft or bill of exchange, made by Wandel Rhines, jr. bearing date on or about the 19th day of October, 1858, and directed to Southworth, Slauson & Co. New York, requiring them to pay to the order of said Wandel Rhines, jr. the sum of $350, sixty days from the date thereof, and indorsed by said Wandel Rhines, jr. and Gilbert Springstead; and which was at that time held and owned by the Bank of Cooperstown. That the said note, so indorsed by the defendants, they delivered to the said Wandel Rhines, jr. with the understanding and upon the condition above mentioned, who nevertheless, in violation thereof, and without the assent or knowledge of either of the defendants, delivered the same to the said Bank of Cooperstown. That the bank, its cashier and officers, knew and had notice of the understanding and condition upon which the note was indorsed, and did not pay any consideration or part with any value therefor. And that the note was not transferred to the bank in good faith, or for good consideration before the same was due, and was not negotiated or passed off, or otherwise transferred, delivered or used to pay, satisfy or discharge the said draft or bill of exchange.

Prentiss *v.* Graves.

The defendants, on these allegations prayed that each of their said signatures and indorsements might be canceled, and the plaintiff enjoined from collecting or instituting any further or other proceedings for the collection of said note of either of the defendants ; or for other proper affirmative relief. No reply was served.

The action was tried at the Otsego circuit in December, 1859. Upon the trial the defendants' counsel asked the court to rule and decide that the allegations in the answer were new matter, constituting a counter-claim, and that the plaintiff having failed to reply thereto, the same should, for the purposes of the action, be taken as true. This the court declined to do, and the defendants' counsel excepted.

The defendants' counsel then moved the court for judgment in favor of the defendants on the pleadings, for the relief prayed for in their several answers, on the ground that they contained new matter, constituting a counter-claim, to which no reply had been served or denial made by the plaintiff, and that the answer should, therefore, for the purposes of the action, be taken as true. The court declined to do so, holding that the answers did not contain a counter-claim, and the defendants' counsel excepted.

The facts alleged in the answers were then substantially proven on the trial, and are sufficiently stated in the opinion of the court. At the close of the evidence the defendants' counsel asked the court to direct a verdict in their favor, which motion was denied, and the defendants excepted. And the court then directed the jury to find a verdict for the plaintiff for the amount of the note, $381.81, to which the defendants each and severally excepted. The defendant Graves brought an appeal.

*E. Countryman,* for the appellant.

*Lathrop & Harris,* for the respondent.

*By the Court,* CAMPBELL, J.   The request on the part of the defendants, that the justice at the circuit should hold and decide that a part of the answer set up a counter-claim, was properly denied.   The defendants needed no affirmative relief, and really sought none.   The facts pleaded were set up as a complete defense at law.   In the case of *The Xenia Bank* v. *Lee,* (2 *Bosw.* 694,) Lee not only claimed in his defense that he was the owner of the notes, but by way of counter-claim demanded that the plaintiff should pay to him the amount thereof, seeking to charge the plaintiff as indorser.   In this case the defendants do not claim to be the owners of the note in suit.   They simply deny their liability as accommodation indorsers.   A judicial determination in their favor, upon that point, is all that is required.   The concluding part of their answer, that the note be given up to be canceled, is mere surplusage.   At all events a reply was wholly unnecessary. No new issue whatever was raised thereby.

The material facts, however, set up in the answer of the defendants, and others relied upon on the trial, are established by the uncontradicted evidence in the case, namely, that the defendants were accommodation indorsers; that they indorsed the note at the request of the maker, solely upon the condition that it was to be used to take up a draft then overdue and held by the plaintiff, and upon which the maker of the note was liable as drawer and was then threatened with prosecution; and that the note was delivered to the plaintiff for the purpose of taking up such draft, but was not accepted by the plaintiff in payment, but on the contrary was retained and held as collateral security to said draft; that the plaintiff gave no new consideration, nor parted with any property, nor gave up any other security, or agreed to extend the time of payment of the draft.   Upon that state of facts was the plaintiff entitled to judgment as ordered at the circuit?   I think the cases of *Coddington* v. *Bay,* (20 *John.* 637,) and *Stalker* v. *McDonald,* (6 *Hill,* 93,) answer the question in the negative.   The note of Mr. Hill in the latter case, is that

an innocent holder of negotiable paper will not be protected against the claim of the true owner, "where it appears that the paper was received as *security for an antecedent debt* due from the person who made the unauthorized transfer, and the holder neither parted with value on the credit of it, nor relinquished any previous security." In the case of *Coddington* v. *Bay*, Senator Viele said, and his language is quoted approvingly in *Stalker* v. *McDonald*, by Senator Lott, now a justice of this court: "The true test I take to be that when the holder is left in as good a condition after a retransfer as he would have been had no transfer taken place, then the title of the owner shall prevail." The language of the plaintiff's cashier in this case was, "we did not advance any money nor pay any thing for the note." "Springstead came to the bank with the note in question. He said he wanted to take up the $350 draft of Mr. Rhines, with the note. He said he brought the note for that purpose, and left the note at the bank. I refused to take the note in payment of the draft. I told him I would take the note only as collateral security for the payment of the draft. We did not receive the note in payment of the draft, or give up the draft. I told him we should hold on to the draft. We did retain the draft, and afterwards commenced a suit upon it, against Mr. Rhines, the maker of it." Springstead was not examined as a witness, and there is no further evidence that even he acquiesced in the application which the bank made of the note. As he was indorser on the draft, failing to get it up, he left the note; thus tacitly allowing the bank to apply it in its own way. But it is seen that no money was paid, no security given up, and should the plaintiff fail to collect this note, it would be left in as good condition as before the transfer. The defendants were but accommodation indorsers. The rule of *strictissimi juris* applies to them. They had the right to make their own terms, and they indorsed only upon an agreement, on the part of the maker of the note, that it should be applied to take up the draft held by the plaintiff. That agreement

or condition was not fulfilled; and the plaintiff having taken the note only as collateral security for a precedent debt, is not a *bona fide* holder for value, and cannot enforce it as against the defendants. In the case of *The Bank of Sandusky* v. *Scoville and others,* (24 *Wend.* 115,) the note had been discounted by the bank, and the proceeds applied to extinguish a debt, and Bronson, J. says: "It is not the case of a note received in security for a precedent debt without parting with any thing at the time." The case of *The Ypsilanti Bank* v. *Martin,* referred to in *Bank of Sandusky* v. *Scoville,* is like the present. The case of *Bank of Salina* v. *Babcock,* (21 *Wend.* 499,) was one where the note was discounted, and securities held by the bank canceled and destroyed. This was the case also in *White* v. *Springfield Bank,* (3 *Sand. S. C. Rep.* 222,) in which this whole subject is fully discussed by the late Chief Justice Duer. All the cases hold that there must be value paid at the time, or something done, such as giving up or cancelling other securities, to entitle the party to claim as a *bona fide* holder. The conditions in this case on which the note was indorsed, were not fulfilled. The draft was not given up, nor canceled. The maker of the note still remained liable to the threatened arrest for obtaining money by false pretenses; for his relief alone the note was indorsed. The defendant Graves alone has appealed; as to him the judgment must be reversed, and a new trial ordered, costs to abide the event.

[Broome General Term, May 8, 1860. *Mason, Balcom, Campbell* and *Parker,* Justices.]