WARREN v. HALL ET AL.

1. CONTRACTS.

Brokers in effecting the sale of cattle, having themselves purchased an interest in the herd, which interest they afterwards sold to a purchaser, who, as a part of the price, agreed to pay them all money actually expended by them in the purchase, are, in the absence of fraud, entitled to the whole amount so expended without deduction on account of commissions received.

2. PRACTICE IN CIVIL ACTIONS—COUNTERCLAIM.

A cause of action arising out of the transaction set forth in the complaint as the foundation of the plaintiff's claim may be set up as a counterclaim, and it matters not, in such a case, that the plaintiff's claim is based upon a tort.

3. IMMATERIAL ERROR.

A judgment which is correct will not be overthrown because the reasoning of the trial court which led to the result may have been inaccurate.

4. PRACTICE IN CIVIL ACTIONS—PARTIES.

All the parties to a joint and several contract are not necessary parties to an action thereon.

5. SAME—DEFECT OF PARTIES.

An objection to a complaint on the ground of a defect of parties must be raised in apt time. It is too late to make it for the first time upon review.

*Error to the District Court of El Paso County.*

PLAINTIFF in error, as plaintiff below, alleges in his complaint:

"1st. That defendants are copartners, doing business as Hall Bros.

"2d. That on or about the 15th day of September, 1884, the plaintiff made a contract with the defendants to purchase an undivided one eighth interest in a certain herd of cattle,

known as the Wilcox herd of cattle, and certain lands, which said herd of cattle and lands were purchased by defendants, together with other persons, of said Wilcox.

" 3d. That at said time the defendants agreed with plaintiff to sell him said interest in said cattle and lands for the same sum which they, the defendants, had paid, in purchasing said interest, to said Wilcox, together with all expenses from the date of purchase by defendants, and interest on said purchase price from the date of said purchase by defendants to the date of sale by defendants to plaintiff at the rate of one and one half per cent per month.

" That at said time the defendants represented to said plaintiff that they paid said Wilcox the sum of $27,500 for said interest in said cattle and lands, and the plaintiff paid said defendants the sum of $27,500 for said interest, together with interest thereon and expenses as aforesaid.

" That plaintiff relied upon the representations so made by defendants, and upon such reliance so paid said sum of money as aforesaid.

" That said representation was false, and defendants did not pay said Wilcox said sum, but paid only the sum of $20,000 for said interest in said cattle.

" That the knowledge of the falsity of said statement and representation came to plaintiff within the last year.

" The plaintiff is damaged by said false statement and fraudulent representations made by defendants in the sum of $7,500, with interest from said date of purchase.

" Wherefore plaintiff demands judgment against defendants for said sum of $7,500, and costs of suit."

To this complaint the following answer was interposed:

" *First*—Come now the defendants in the above entitled action and in answer to the complaint filed herein deny each and every allegation and averment therein contained.

" *Second*—The defendants further answering the complaint and as a counterclaim against plaintiff herein allege:

" 1st. That on or about September 15, 1884, for a good and valuable consideration, the defendants, Nathan Hall and

William Hall, under their copartnership name of Hall Bros., bargained, sold and delivered to the plaintiff, M. V. Warren, and one Robt. T. Howard, an undivided one fourth interest in a certain herd of horses and cattle, in Las Animas county, Colorado, generally known as the ' J–X ' or Trinidad Cattle Company herd, and also an undivided one fourth interest in certain lands in said county, used in connection with the grazing of said herd.

" 2d. That the said sale was the same transaction set forth in plaintiff's complaint.

" 3d. That as a part consideration for the sale of said interest in said horses and cattle and lands to the said M. V. Warren and Robt. T. Howard as aforesaid, they, the said M. V. Warren and Robt. T. Howard, did jointly and severally undertake and promise and agree with the defendants herein to assume the payment of and to pay according to their tenor and effect four promissory notes made, executed and delivered by defendants herein under their firm name of Hall Bros. to one James Wilcox, each of said notes bearing date October 30, 1893, each payable on or before three years from date, with interest on each from date at the rate of ten per cent per annum, interest payable annually.

" One of said notes was in the sum of $5,000, one $12,000, and two in the sum of $11,000 each. That said Warren and Howard, in accordance with their said agreements, paid all the interest on said notes up to October 30, 1885, amounting to $7,800, and one half of the principal of each of said notes, the aggregate amount of the principal paid being $19,500.

" 4th. That the balance due on said notes, to wit, the sum of $19,500 and interest thereon, at ten per cent per annum, from October 30, 1885, to October 30, 1886, amounting to $1,950, the said Warren and Howard failed and refused to pay.

" 5th. That said Hall Bros., defendants herein, were compelled to pay and did pay to the said Wilcox said balance of the principal of said notes and said interest of $1,950, and neither said Warren nor Howard have repaid the same.

" Wherefore, defendants ask judgment against said Warren for $21,450, with interest thereon from October 30, 1886, at ten per cent per annum, and for costs of suit."

Plaintiff by replication denied each and every allegation of the counterclaim. Upon these issues the action was tried to the court without a jury. The trial resulted in findings and judgment in favor of the defendants upon the cause of action set out in the complaint, and also in favor of the defendants upon the issues joined upon the counterclaim. The judgment of the court below in favor of the defendants is for the sum of $15,464.78 and costs. Plaintiff brings the case here upon error.

Mr. J. M. JOHN, Mr. A. W. RUCKER and Mr. W. J. SHARMAN, for plaintiff in error.

Messrs. McCHESNEY & HITT and Mr. H. B. BABB, for defendants in error.

CHIEF JUSTICE HAYT delivered the opinion of the court.

The evidence introduced at the trial tends to prove that in the month of October, 1883, and prior thereto, one James Wilcox was the owner of certain cattle, horses, etc., known as the " J–X " brand, and that the defendants, Hall Brothers, with one Barela, undertook to sell the same for the sum of $225,000 under a contract with Mr. Wilcox, by the terms of which the last mentioned parties were to be paid a commission of $8,120 for their services in case of sale.

Hall Brothers and Barela thereupon set about to find purchasers for this property, and soon thereafter met with Scruggs and Deering, of Kansas City, Mo., and brought them out to Colorado to look at the stock. As the result of the examination made Scruggs and Deering were well pleased with the property, but for some reason did not desire to buy the whole of it. The negotiations were, however, continued, and as a result it was ultimately agreed that Scruggs and Deering

should each take a one fourth interest in the property, Barela one fourth, and Hall Brothers the remaining one fourth; each purchaser to make a separate and distinct purchase of an undivided interest. The interests were paid for in cash, checks and notes accordingly, neither purchaser assuming any liability beyond that arising from the purchase of the particular interest taken by him. After the sale was consummated and the purchase price paid, Wilcox paid the commission as previously agreed upon; one half the amount, to wit, $4,060, was paid to Hall Brothers by check, and the balance to Mr. Barela.

Soon thereafter Scruggs, Deering, Barela and Hall Brothers formed a copartnership known as The Trinidad Cattle Company, and transferred their interest in this and other property to such company. About ten months after this transaction the defendant Nathan Hall, acting for Hall Brothers, sold to R. T. Howard and M. V. Warren the one fourth interest in The Trinidad Cattle Company held by the former. This sale was made at Dodge City, Kansas, and the evidence shows conclusively that it was not a sale to plaintiff of a one eighth interest and to Howard of a like interest, as claimed by plaintiff, but a sale of one fourth interest to the two jointly. As a consideration for this sale, Warren and Howard agreed to " discharge all indebtedness of the said Halls, indebtedness of The Trinidad Cattle Company that now stands on the books of said company, and it is further agreed that Howard and Warren will pay back to Hall Brothers all moneys that they have actually expended in the purchase of cattle and lands for the said company, with a profit of eighteen per cent on the same."

The evidence shows that a portion of the indebtedness mentioned was four promissory notes, aggregating $39,000, executed by Hall Brothers to James Wilcox, as a part of the consideration for the original sale by Wilcox. In pursuance of this contract a part of the notes executed by the defendants Hall Brothers to Wilcox were paid, but on November 18, 1886, there was still due and unpaid on said notes

the sum of $21,450, principal and interest. Afterwards additional amounts were realized from the sale of certain property mortgaged by Howard to secure the payment of these notes, so that a balance of only $15,464.78 remained unpaid at the time of the institution of this suit. It is further shown by the evidence that defendants Hall Brothers paid this balance in full to Wilcox, and this sum of $15,464.78 is the basis of the judgment entered by the district court upon the cross complaint of defendants.

It is contended here, as in the court below, that under the evidence plaintiff should have been allowed the sum of $4,060, the amount of the commission received by Hall Brothers upon the original sale by Wilcox. The argument in support of this contention is in substance as follows : Under the agreement between Hall Brothers and Howard and Warren the consideration to be paid by the latter was to be based upon the cost to Hall Brothers, and it is contended that this cost as a matter of fact was not one fourth of the contract price of $225,000, to wit, the sum of $56,250, but such sum less the commission of $4,060 received by Hall Brothers from Wilcox.

We do not think that this contention of plaintiff is well founded. It is admitted that $225,000 was the lowest sum for which Wilcox ever offered the property, although he was willing to pay a commission in case a sale was made. And if plaintiff is entitled to any deduction on account of the commission, it is only for that portion accruing upon the interest which he afterwards purchased jointly with Howard, viz., a one fourth interest. In other words, he would not in any event be entitled to one half of the commission of $8,120 received upon the sale of the whole property, but to only one quarter of the same.

But we are of the opinion that the disallowance of this claim by the district court was proper. Hall Brothers were carrying on business as brokers for the sale of cattle ; as such brokers, with Barela, they presented the property to Scruggs and Deering, brought them to Colorado at their own expense,

took them where the herds were then grazing for the purpose of making an investigation. If the property had been sold to third parties there can be no doubt that Hall Brothers and Barela would have been entitled to the commission agreed upon, and the fact that Hall Brothers found it necessary to take a one fourth interest in the herd in order that the sale might be consummated, in no manner affected their right to the commission. The evidence shows without contradiction that the total amount of $225,000 was actually paid Wilcox in cash and secured notes, that were satisfactory to him. There is no evidence of any fraud or collusion, and under these circumstances the judgment of the district court in favor of the defendants upon this claim cannot be disturbed.

At the trial the plaintiff objected to any evidence in support of the counterclaim. This objection was based upon the ground that the action of the plaintiff was one arising in tort, while the counterclaim was based entirely upon a contract. The Civil Code of this state provides for two kinds of counterclaims: "First, a cause of action arising out of the transaction set forth in the complaint or answer, as the foundation of the plaintiff's claim or defendant's defense, or connected with the subject of the action. Second, in an action arising upon contract, any other cause of action arising also upon contract, and existing at the commencement of the action."

The cause of action here set out arose out of the transaction set forth in the complaint as the foundation of plaintiff's claim. This transaction is the agreement made at Dodge City, Kansas, for the sale by Hall Brothers of a one fourth interest in the property to Howard and Warren. It matters not that the plaintiff's claim is based upon a tort. The counterclaim is for the balance of the purchase price claimed under this sale, and is directly covered by the code provision first above quoted. Bliss on Code Pleading, sec. 372; Pomeroy's Remedies & Rem. Rights, sec. 742 (4).

The agreement for the sale from Hall Brothers to the de-

fendants Howard and Warren was reduced to writing and signed by the parties. No copy of this paper was made, but the original was placed in the custody of Mr. J. M. John, one of plaintiff's attorneys. Previous to the trial the defend-ants repeatedly demanded of Mr. John an opportunity to inspect this contract. These demands were refused for the reason that the paper had been mislaid and could not be found. It was found, however, some time previous to the trial in the district court, but neither of the defendants nor their counsel was made aware of this fact, and after introduc-ing evidence of its loss, oral evidence of its contents was permitted.

This evidence was directed principally to proof of the joint purchase and joint liability on the part of Warren and How-ard, and was followed up by proof of the statutory law of the state of Kansas making parties to such contracts severally as well as jointly liable.

To escape the consequences of such evidence the plaintiff at a later period of the trial offered and was permitted to introduce the written instrument. His counsel now acknowl-edge their mistake in withholding this paper, and ask this court not to inflict loss upon their clients for the indiscretion of counsel. As the paper was introduced by consent in the district court, we shall consider the case without further ref-erence to the fact that it was not produced earlier. The in-strument reads as follows :

" STATE OF KANS. }
" COUNTY OF FORD. }

      " DODGE CITY, KAS., Sept. 2d 1884.
"Know all men by these presents that we N. J. & Wm. Hall, of Kans City Mo. have this day Bargained Sold and will Hereafter convey all their right title & interest in the Trinidad Cattle Co. of Trinidad Colorado, unto R. T. How-ard & M. V. Warren of Colorado for the sum of one dollar or more paid to us & promised to be payed by certain prom-issory notes or Cash, & it is further agreed that the afforesaid

Howard & Warren will Discharge all indebtedness of the said Halls indebtedness of the Trinidad Cattle Co. that now Stands on the books of said Company, & it is further agreed that Howard & Warren will pay back to Hall Bros all moneys that they have actually Expended in the purchase of Cattle & Lands for the said Company, with a profit of eighteen per cent. On the same.

(Signed)        " N. J. HALL,<br>
" R. T. HOWARD,<br>
" M. V. WARREN.

" Witness,
" J. W. WILSON."

This agreement shows the joint character of the contract independently of the oral evidence. It is claimed, however, that plaintiff Warren was relieved from his joint obligation by a subsequent contract. The evidence relied upon as producing this result shows that plaintiff Warren paid one half only of the purchase price as fixed by the contract, and that the defendants took from Howard individually a chattel mortgage as security for the balance. Neither this mortgage nor a copy thereof was produced at the trial, but oral testimony as to its contents was received without objection. From this it is shown that it was given to secure the unpaid balance on the Wilcox notes, and that its provisions were the same as those of a certain deed of trust. Turning to that instrument we find it recited therein that Warren and Howard had jointly assumed the payment of the Wilcox notes.

Moreover, plaintiff while upon the witness stand admitted that Nathan Hall, the only defendant present at the time, expressly refused to release him. The following is taken from the stenographic report of Warren's cross-examination, viz. :

" Q. Did you make any inquiry as to what he had reference when he told you he didn't release you? A. I don't think I made him any reply whatever. Q. What did you suppose he meant when he told you that he did not release you? A. Well, I supposed that he wanted me to pay the

notes.  Q. You supposed he had reference to those Wilcox notes at the time, didn't you?  A. Well, I was not positive.  Q. Didn't you suppose so?  A. Well, I supposed so, yes sir."

This testimony strongly tends to show that it was not the understanding of the parties that plaintiff was to be released from his obligation to pay the notes.  There is no evidence to the contrary, and if there were we would be bound upon this review by the findings of the district court.  Upon a careful examination of the record we see no reason for disturbing the judgment, and it is accordingly affirmed.

*Affirmed.*

### UPON REHEARING.

PER CURIAM.  We cannot agree with counsel for plaintiff in error in the claim that the evidence discloses fraud and deceit on the part of Hall Brothers and Barela.  We do not think this charge is made out against either.  Moreover, there is an express finding to this effect in the written opinion delivered by the district judge at the trial below and furnished by plaintiff in error for inspection upon this petition for a rehearing.

It is contended that the trial court based its conclusion that there was a joint agreement obligating both Howard and Warren to pay the Wilcox notes, not upon the Dodge City agreement in writing, but upon oral testimony, while this court finds the joint nature of the obligation from the writing.  This claim, if true, does not militate against the conclusion reached by both courts as to the joint nature of the obligation, and we might dismiss the matter with the statement that it is not the reasoning of the trial court but the conclusion—the judgment—that is to be reviewed.  If the judgment is correct it will not be overthrown because the result was reached by reasoning which we may not be able to follow.

But it is apparent that counsel have misunderstood the reasoning of the trial court.  The learned judge, while re-

lying upon the written instrument, goes further and shows that the same result must be reached if the oral evidence alone be considered. In other words, he demonstrates that whether the one or the other be considered, the conclusion is the same in either instance. This is apparent from the following:

" Whatever written agreement there was in relation to the payment of these Wilcox notes must be found in the contract itself, and all that can be gathered from this contract is that Howard and Warren, for the sum of one dollar or more, paid to Hall Brothers, and promised to be paid by certain promissory notes and cash, must have reference not only to the amount of money which Warren and Howard paid Hall Brothers at the time this written contract was entered into, but it must refer also to the cash paid them thereafter by Warren and Howard, and the individual notes given by them, and also *to the promissory notes which Hall Brothers had given to Wilcox for the balance of the purchase money upon the sale of the Wilcox herd to Hall Brothers and others.* And if it be said that the written contract does not relate to the payment of the Wilcox notes, but that the promissory notes referred to mean the individual promissory notes afterwards given by Warren and Howard to the Hall Brothers, then the agreement in relation to the payment of these Wilcox notes must rest entirely in parol. Now, it is true that Hall Brothers say that the entire agreement in relation to the Wilcox notes is found in the contract itself. I can readily understand that they may have thus concluded from the expression ' certain promissory notes ' contained in the contract itself, but if the agreement in relation to the payment of the Wilcox notes does rest in parol, nevertheless the preponderance of the testimony, in my judgment, is with the defendants as to what this contract was.

  *  *  *  *  *  *  *  *

" So that, whether the agreement in relation to the payment of the Wilcox notes be expressed and embodied in the written contract, or whether it rest in parol, it seems to me

that the preponderance of the testimony is with the defendants as to their theory of what the contract was."

It is said that if the joint character of the purchase be conceded, the subsequent conduct of the parties released Warren from liability.  In support of this contention it is claimed that Hall Brothers accepted an individual note from Howard for one half of the amount due, and that Warren paid the remaining one half.  This claim for release finds no basis in the pleadings ; it is not supported by any satisfactory evidence, and does not appear to have been urged at the trial and cannot prevail against the judgment.  Howard has not been made a party plaintiff or defendant, and it is now suggested for the first time that there is a defect of parties.  As the contract is both joint and several, Howard is not a necessary party.  Aside from this, the objection comes too late.

For these reasons, in addition to those given in the original opinion, the judgment must be affirmed.

*Affirmed.*