## SCOTT, Respondent, *v.* WAGGONER et al., Appellants.

### (No. 3,348.)

[(Submitted February 6, 1914.   Decided February 26, 1914.)

### [139 Pac. 454.]

*Pleading   and   Practice — Counterclaim — Statutes — Liberal Construction — Torts—Contracts—Conversion—Demand—Refusal—Instructions.*

New Trial—Affirmance, When.
1.   Where a new trial, asked for on several grounds, is granted in an order general in terms, it will be affirmed if it can be justified upon any one of the grounds stated in the notice of intention.

Counterclaim—Statutes—Liberal Construction.
2.   Section 6540, Revised Codes, providing that an answer may contain a statement of new matter constituting a counterclaim, and section 6541 defining the nature of such counterclaim, must be liberally construed, they being designed to enable parties litigant to adjust their differences in one action, and thus to prevent a multiplicity of suits.

[As to scope and office of counterclaim, see note in 89 Am. Dec. 482.]

Same—Contracts—Torts—Pleading.
3.   *Held,* that a counterclaim sounding in tort may be pleaded as against a demand upon contract, provided it arises out of the transaction which gave rise to plaintiff's cause of action.

Same—Contracts—Conversion—Pleading.
4.   Under the rule declared in paragraph *3, supra,* in an action by a landlord for rent due under a written lease and for damages for waste committed on the premises, a counterclaim for the conversion of personal property placed thereon by defendants was proper.

Same.
5.   The counterclaim above referred to, *held* not obnoxious to the rule that a cause of action pleaded as upon a right in favor of two or more persons jointly is not sustained by proof of a right in one of them.

Actions—Issues—Determinable as of What Date.
6.   All issues must be determined as of the date of the commencement of the action.

Counterclaim—Pleadable When.
7.   Unless a counterclaim exists and is matured at the time the action in which it is sought to interpose it is commenced, it cannot be pleaded.

Same—Conversion—Demand and Refusal.
8.   In an action by a landlord against his tenant for breach of a contract of lease, a cause of action constituting a counterclaim for the conversion of personal property belonging to the lessees and alleged to have been taken by plaintiff upon re-entry of the premises, arose only after demand and refusal to redeliver, provided the re-entry was justified; if not justified, a conversion occurred at the time of re-entry, irrespective of demand.

[As to what constitutes conversion of personalty, see notes in 15 Am. Dec. 151; 24 Am. St. Rep. 795. As to necessity of demand to support action of trover, see notes in Ann. Cas. 1913A, 1105, 1108.]

Instructions—To be Viewed as a Whole.
    9. Instructions must be viewed as a whole where error in giving and refusing certain of them is relied on for a reversal of the judgment.

*Appeal from District Court, Powell County; Geo. B. Winston, Judge.*

ACTION by Ida D. Scott against A. W. Waggoner and others. From a judgment for plaintiff, and an order granting a new trial, defendants appeal. Appeal from judgment dismissed. Appeal from order granting new trial affirmed.

*Messrs. Scharnikow & Paul,* and *Mr. L. W. Jordan,* for Appellants, submitted a brief; *Mr. Jordan* argued the cause orally.

If the counterclaim, as pleaded by the defendants, arose out of the transaction set forth in the complaint, as the foundation of the plaintiff's claim, then the court erred in sustaining plaintiff's motion for a new trial. The lease was the transaction which was the very foundation stone of plaintiff's claim. The counterclaim is for a violation of a right which also grew out of the relations established by the lease, and is therefore a cause of action arising out of the transaction which is the foundation of plaintiff's claim. (*Gilbert* v. *Loberg,* 86 Wis. 661, 57 N. W. 982; *Vilas* v. *Mason,* 25 Wis. 310; *Gutzman* v. *Clancy,* 114 Wis. 589, 58 L. R. A. 744, 90 N. W. 1081; *McAlester* v. *Landers,* 70 Cal. 79, 11 Pac. 505; *Ludlow* v. *McCarthy,* 5 App. Div. 517, 38 N. Y. Supp. 1075; *York* v. *Steward,* 21 Mont. 515, 43 L. R. A. 125, 55 Pac. 29; *Harmony Co.* v. *Rauch,* 62 Ill. App. 97.)

In an action for rent, a cause of action for taking defendant's goods and holding them for, or applying them upon, the rent sued upon is to be deemed as arising out of the same transaction within the rule as to counterclaims. (*Littman* v. *Coulter,* 23 Abb. N. C. (N. Y.) 60, 7 N. Y. Supp. 1.)

In an action against a tenant for carrying away certain articles forming a part of the property leased, a counterclaim for the value of articles owned by the defendants, but which plaintiff refused to allow him to remove when he surrendered possession of the premises, is good. (*Vilas* v. *Mason,* 25 Wis.

310.) Where the lessee is damaged by the disturbance of his possession by the lessor, the court will not drive the lessee to his action for trespass for the recovery of such damages. The damages resulting from a breach of the covenant for quiet enjoyment arise out of the contract of leasing; and in an action by the lessor upon a lease for rents due, such damages may be recovered by way of counterclaim. (*Hanley* v. *Banks,* 6 Okl. 79, 51 Pac. 664.) Defendant, in an action for rent, may set up as a counterclaim an eviction from a part of the demised premises, in consequence of which he sustained damages consisting of the destruction of certain property then on the land. (*Ludlow* v. *McCarthy, supra.*) In an action to recover an installment of rent due on a lease, defendant may recoup damages he may have sustained in consequence of any breach of the covenants in the lease on the part of plaintiff. (*Pepper* v. *Rowley,* 73 Ill. 262.)

The word "transaction," as used in subdivision 1 of section 6541, Revised Codes, is not limited to the facts set forth in the complaint, but includes the entire series of acts and mutual conduct of the parties in the business or proceeding between them, which formed the basis of the agreement. (34 Cyc. 686; 22 Am. & Eng. Ency. of Law, 1st ed., 391–393; *Story & Isham Com. Co.* v. *Story,* 100 Cal. 30, 34 Pac. 671; *Advance Thresher Co.* v. *Klein,* 28 S. D. 177, 133 N. W. 51; *Craft Refrigerating Mach. Co.* v. *Quinnipiac Brew. Co.,* 63 Conn. 551, 25 L. R. A. 856, 29 Atl. 76; *King* v. *Coe Commission Co.,* 93 Minn. 52, 100 N. W. 667.) The word "transaction," being placed in an immediate connection with the word "contract" and separated therefrom the disjunctive "or," the legislature intended by it something different from "contract," for the most familiar rules of textual interpretation would be violated by the assumption that no such significance was intended. (*De Ford* v. *Hutchinson,* 45 Kan. 318, 11 L. R. A. 257, 25 Pac. 641.) Every contract is a transaction, but every transaction is not a contract. (*Sheehan* v. *Pierce,* 70 Hun (N. Y.), 22, 23 N. Y. Supp. 1119; *Xenia Branch Bank* v. *Lee,* 2 Bosw. (N. Y.) 694, 7 Abb. Pr. 372.) And the "contract" is the result of a transaction, while the "transac-

tion" covers all things done and said which results in a contract. (*De Ford* v. *Hutchinson, supra.*) The term "transaction" is more extensive than "a cause of action" or "subject of the action," for out of it the defendant's cause of action is said to arise. (Pomeroy on Remedies, 2d ed., 818, sec. 774.)

The counterclaim in the answers of the defendants is one which can be pleaded by the defendants, for their liabilities are joint and several. (Pomeroy's Code Remedies, sec. 634; 34 Cyc. 731; *Parsons* v. *Nash*, 8 How. Pr. (N. Y.) 454.)

When principal and surety are sued jointly upon their obligations it is generally held that the principal may set off a judgment or demand due him from the plaintiff. (*Temple Street Ry. Cable Co.* v. *Hellman*, 103 Cal. 634, 37 Pac. 530; *Harrison* v. *Henderson*, 4 Ga. 198; *Hayes* v. *Cooper*, 14 Ill. App. 490; *Reeves* v. *Chambers*, 67 Iowa, 81, 24 N. W. 602; *Field* v. *Maxwell*, 44 Neb. 900, 63 N. W. 62; *Springer* v. *Dwyer*, 50 N. Y. 19; *Wagner* v. *Stocking*, 22 Ohio St. 297; *Hollister* v. *Davis*, 54 Pa. 508.)

*Mr. W. E. Keeley*, and *Mr. S. P. Wilson*, for Respondent, submitted a brief; *Mr. Wilson* argued the cause orally.

Subdivision 1 of section 6541, Revised Codes, has been construed as referring to the origin and ground of plaintiff's right to recover or obtain the relief asked for, rather than as relating to the thing itself about which the controversy has arisen. (*Collier* v. *Ervin*, 3 Mont. 142; *Potter* v. *Lohse*, 31 Mont. 91, 77 Pac. 419.) The subject of the counterclaim is entirely independent, distinct and separate from the origin or ground of plaintiff's right of recovery. The basis of the counterclaim is the alleged wrongful acts of plaintiff done at a time long after the termination of the contract upon which plaintiff sued. It may be urged that if it were not for the lease in question, defendant Melvina Waggoner would not have placed her property within the reach of the plaintiff and the temptation to the plaintiff of being guilty of conversion would not have existed, and probably the conversion would not have then occurred; yet the mere

incident that the conversion was committed at the same place where the original contract was to be performed cannot of itself sufficiently connect the conversion with the origin and ground of plaintiff's right to recover so as to make it a lawful counterclaim under subdivision 10. (*Goldberger* v. *Leibowitz,* 42 Colo. 99, 93 Pac. 1108; *Kennett* v. *Fickel,* 41 Kan. 211, 21 Pac. 93; *Marks* v. *Tomkins,* 7 Utah, 421, 27 Pac. 6; *Allison* v. *Shinner,* 7 Okl. 272, 54 Pac. 471; *Keegan* v. *Kinnare,* 123 Ill. 280, 14 N. E. 14; *Wells* v. *Clarkson,* 2 Mont. 379; *Osmers* v. *Furey,* 32 Mont. 593, 81 Pac. 345; *Brugman* v. *Burr,* 30 Neb. 406, 46 N. W. 644.)

While it has been held to the contrary, we think the prevailing and best considered rule is that a claim, in order to be available as a counterclaim, must be a demand in favor of the defendant upon which he might have maintained an independent action against the plaintiff at the time of the commencement of the action, in which he seeks to interpose a counterclaim. (*Howze* v. *Davis,* 76 Ala. 381; *Ellis* v. *Cothran,* 117 Ill. 458, 3 N. E. 411; *Wiley* v. *Bunker Hill Nat. Bank,* 183 Mass. 495, 67 N. E. 655; *Godkin* v. *Weber,* 158 Mich. 515, 122 N. W. 1083; *Gurske* v. *Kelpin,* 61 Neb. 517, 85 N. W. 557.)   In *Youngernan* v. *Long,* 95 Iowa, 185, 63 N. W. 674, it was held that damages alleged to have been sustained by defendant by the wrongful issuance of a writ of attachment contemporaneous with the institution of the suit could not be allowed as a counterclaim, the same not being in existence at the time the action was commenced.   To the same effect, see *Esbensen* v. *Hover,* 3 Colo. App. 467, 33 Pac. 1008; *Rumsey* v. *Robinson,* 58 Iowa, 225, 12 N. W. 243; *Tessier* v. *Englehart,* 18 Neb. 167, 24 N. W. 734.   In *Orton* v. *Noonan,* 29 Wis. 541, the court held that a counterclaim for damages caused after the commencement of an action for rent by the breach of the plaintiff's covenant to keep the demised premises in repair could not be allowed.   (See, also, *Strehlow* v. *McCleod,* 17 N. D. 457, 17 Ann. Cas. 423, 117 N. W. 525.)

The obligation of the Waggoners was a joint obligation.   Such being the case, a counterclaim existing in favor of one only of

the joint obligors was not the proper subject of counterclaim in an action upon lease. This is the rule laid down in California, in the United States supreme court and in this state. (*Kemp* v. *McCormick,* 1 Mont. 420; *Collier* v. *Ervin, supra; Roberts* v. *Donovan,* 70 Cal. 108, 9 Pac. 180, 11 Pac. 599; *Hook* v. *White,* 36 Cal. 299; *Brown* v. *Daly,* 33 Mont. 523, 84 Pac. 883.)

MR. JUSTICE SANNER delivered the opinion of the court.

This proceeding, with its separate appeals from the judgment and from an order granting a new trial in the same case, aptly illustrates one of the anomalies of our appellate procedure. As the effect of an order granting a new trial is to set aside the verdict or other decision upon the facts and thus to abrogate the judgment founded thereon, and as the order granting the new trial in this case was entered before the notice of appeal from the judgment was filed, it would seem that there was no judgment to appeal from. The office of an appeal from the judgment is to present questions of law, but its effect, if successful, is to do what in this case has been done, *viz.,* to abrogate the judgment. The effect of the order appealed from is, of course, conditional, and a reversal of it would operate to restore the judgment; so that, from this point of view, we are asked by one of these appeals to undo what by the other it is sought to have done.

The order granting a new trial was a general one and must be [1] affirmed if it can be justified upon any of the grounds urged in vindication of it and stated in the notice of intention. These are: Error in permitting the defendants to plead and to produce evidence in support of their counterclaim; error in the instructions, and that the verdict is contrary to the evidence.

Plaintiff, for a cause of action, alleges: That on July 25, 1910, she leased by written instrument to A. W. Waggoner and Melvina Waggoner certain premises in the city of Deer Lodge known as the Scott House, "together with certain personal property therein contained," for the term of two years at the rental of $100 per month; that in consideration of the lease

a bond in the sum of $1,500 was executed by the Waggoners as principals, and by the defendants O'Neil, Moe and Smith as sureties, conditioned that the Waggoners should pay the rent and perform all the other agreements imposed upon them by the lease; that the Waggoners entered upon, occupied and used the Scott House as a hotel from August 1, 1910, to February 1, 1911, when, having failed in their hotel business, they abandoned the said premises without the permission or consent of the plaintiff and without notice to her or her agents; that at the time of such abandonment there was due plaintiff the sum of $50, balance of the rent for January, 1911, and $100 rent for February, 1911, no part of which has been paid; that since August 1, 1911, "many articles of personal property leased by the plaintiff" to the Waggoners "have been broken, destroyed, injured and carried away from the premises, and  *  *  *  are now not in or about the said premises, and injury and waste has been committed in and about the premises to the property leased," to the plaintiff's damage in the sum of $240, no part of which has been paid; that notice of all this was given to defendant sureties and payment demanded of them; that there is also due the further sum of $100 rent for the month of March, 1911, no part of which has been paid. A general demurrer to the amended complaint was filed, submitted and overruled; whereupon two separate answers were filed—one by the Waggoners and one by the other defendants—which answers admitted the execution of the lease and bond, denied all the other allegations of the amended complaint, pleaded certain affirmative defenses based upon an alleged unlawful eviction of the Waggoners by the plaintiff, and closed with a counterclaim which is to the following effect: That the Waggoners "went into the possession of said premises, under and by virtue of said lease aforesaid, and at great cost and expense prepared said premises for the purposes of conducting a hotel and lodging-house therein, and that they refitted and refurnished said building and put into said building under and by virtue of the terms of said lease aforesaid, the following described personal property of the value

of $350, or more''; that on or about the month of February, 1911, plaintiff, without cause or reason therefor, unlawfully · evicted and ousted the Waggoners from the premises and at the same time took and has since kept possession of the personal property above referred to, and has refused to surrender the same or pay the value thereof, notwithstanding the demands of the Waggoners and to their damage in the sum of $350. To this counterclaim as pleaded by the Waggoners and as pleaded by the other defendants, demurrers and motions to strike were filed, specifically urging that the counterclaim is not of the character specified in section 6541, Revised Codes. These demurrers and motions were overruled and the essential allegations of the counterclaim were put in issue by replies.

· It is stated in the brief of appellants, though without any warrant apparent in the record, that the new trial was granted because in the opinion of the district judge the counterclaim was [2] not a proper one, and to this much argument is directed. Section 6540, Revised Codes, provides, among other things, that· an answer may contain a statement of any new matter constituting a counterclaim, but such counterclaim ''must tend, in some way, to diminish or defeat the plaintiff's recovery, and must be one of the following causes of action against the plaintiff, or, in a proper case, against the person whom he represents, and in favor of the defendant, or of one or more defendants, between whom and the plaintiff a separate judgment may be had in the action: (1) A cause of action arising out of the contract or transaction, set forth in the complaint, as the foundation of the plaintiff's claim, or connected with the subject of the action; (2) in an action on contract, any other cause of action on contract, existing at the commencement of the action.'' (Sec. 6541.) That these provisions are designed to enable parties litigant to adjust their differences in one action, so far as that can logically be done, and thereby to prevent multiplicity of suits, is made plain by the further provision that if the defendant omit to set up a counterclaim in the classes mentioned in subdivision 1 of section 6541, neither he nor his assignee can afterward

maintain an action against the plaintiff thereon.   (Sec. 6547.)
For statutes so highly remedial, a broad and liberal construction
is required in order that the purposes designed by them shall
be most completely served.

1.   Thus premising, we take up the declaration of respondent
that ''the counterclaim of defendants was a cause of action in tort
[3, 4]   for conversion of personal property and therefore not the
proper subject of counterclaim against plaintiff's cause of action
upon contract.''   In the prolonged effort to achieve full under-
standing of the true meaning and purpose of the reformed pro-
cedure, many decisions have been promulgated which give
countenance to this view; but we think that it cannot be correct.
Subdivision 1, above quoted, specifies three things as possible
bases of counterclaim, *viz.*, the contract sued on, the transaction
set forth, and the subject of the action.   Either these things are
different and distinct, or the provision is ''a misleading tautol-
ogy.''   Elementary rules of interpretation require that some
different significance be given to these terms; but if they are
different and distinct, then counterclaims may exist which do not
sound in contract.   The reason assigned for the doctrine that a
counterclaim sounding in tort cannot be pleaded as against a
demand upon contract is the supposed impossibility of legal con-
nection between the two events; but every money demand is
either upon contract or upon tort, and the same reason may be
and is assigned with stronger emphasis for denying the right to
plead a counterclaim in tort as against a demand in tort.   If a
counterclaim in tort cannot be pleaded as against a demand
either upon tort or in contract, then, in the case of money de-
mands we have a counterclaim which is not a counterclaim—a
conclusion which cannot be accepted.   As pointed out by Mr.
Pomeroy (Code Remedies, Div. 6, subd. 1), the solvent of the
difficulty lies in the breadth and scope of the terms ''transac-
tion'' and ''subject of the action.''   The term ''transaction'' is
not legal and technical—it is common and colloquial; it is there-
fore to be construed according to the context and to approved
usage.   (Rev. Codes, sec. 8070.)   As so construed it is broader

than "contract" and broader than "tort," although it may include either or both; it is "that combination of acts and events, circumstances and defaults, which, viewed in one aspect, results in the plaintiff's right of action, and viewed in another aspect, results in the defendant's right of action" (Pomeroy's Code Remedies, sec. 774), and it "applies to any dealings of the parties resulting in wrong, without regard to whether the wrong be done by violence, neglect or breach of contract." (34 Cyc. 686; 1 Sutherland on Code Pleading, sec. 633; *Craft Refrigerating Mach. Co.* v. *Quinnipiac Brewing Co.,* 63 Conn. 551, 25 L. R. A. 856, 29 Atl. 76; *Story & Isham Com. Co.* v. *Story,* 100 Cal. 30, 34 Pac. 671; *Advance Thresher Co.* v. *Klein,* 28 S. D. 177, 133 N. W. 51; *Woodruff* v. *Garner,* 27 Ind. 4, 89 Am. Dec. 477; *King* v. *Coe Commission Co.,* 93 Minn. 52, 100 N. W. 667.) When in this sense of the word a cause of action in favor of the defendant arises from the "transaction" set forth in the foundation of plaintiff's claim, it is pleadable as a counterclaim, no matter what its technical soundings or those of plaintiff's demand may be. (1 Sutherland on Code Pleading, sec. 635; *Adams* v. *Schwartz,* 137 App. Div. 230, 122 N. Y. Supp. 41; *Gross* v. *Hochstim,* 130 N. Y. Supp. 315; *Harrington* v. *Jaeckel,* 75 Misc. Rep. 653, 133 N. Y. Supp. 933; *Lind* v. *Demorest,* 116 N. Y. Supp. 656; *Wadley* v. *Davis,* 63 Barb. (N. Y.) 500; *Barber* v. *Ellingwood,* 137 App. Div. 704, 122 N. Y. Supp. 369; *Kneeland* v. *Pennell,* 49 Misc. Rep. 94, 96 N. Y. Supp. 403; *Deagan* v. *Weeks,* 67 App. Div. 410, 73 N. Y. Supp. 641; *Ter Kuile* v. *Marsland,* 81 Hun, 420, 31 N. Y. Supp. 5; *Heigle* v. *Willis,* 50 Hun, 588, 3 N. Y. Supp. 497; *Xenia Branch Bank* v. *Lee,* 7 Abb. Pr. (N. Y.) 389, 2 Bosw. 694; *Tinsley* v. *Tinsley,* 15 B. Mon. (Ky.) 454; *Gutzman* v. *Clancy,* 114 Wis. 589, 58 L. R. A. 744, 90 N. W. 1081; *McArthur* v. *Green Bay etc. Canal Co.,* 34 Wis. 139; *Warren* v. *Hall,* 20 Colo. 508, 38 Pac. 767; *De Ford* v. *Hutchinson,* 45 Kan. 318, 11 L. R. A. 257, 25 Pac. 641; *Judah* v. *Trustees etc.,* 16 Ind. 56; *Bitting* v. *Thaxton,* 72 N. C. 541; *McHard* v. *Williams,* 8 S. D. 381, 59 Am. St. Rep. 766, 66 N. W. 931, and the cases cited above.)

It is quite true that some detached sentences in the earlier decisions of this court may be quoted contrary in effect to the conclusions above stated; but these utterances, occasioned by circumstances easily distinguishable from the present case and made *arguendo,* are no authority for affirming that in no instance can a counterclaim technically in tort arise out of the same transaction as the plaintiff's demand, when the latter is *ex contractu* in form.    For instance: In *Wells* v. *Clarkson,* 2 Mont. 379, the court, distinguishing *Roberts* v. *Carter,* 38 N. Y. 107, said: "The facts in that case appear from the reported decision to have been that Carter brought an action against Roberts on a contract. Before judgment Carter assigned his claim to one Terry, and on the 23d day of July, 1857, a judgment was entered in favor of Terry in the action.    Roberts, at the time of this assignment to Terry, was prosecuting an action against Carter for damages for fraud.    The claim of Roberts was for unliquidated damages, at the date of this assignment by Carter to Terry, and hence Roberts at the date thereof had no right of setoff, equitable or otherwise, of a claim for unliquidated damages against a claim on contract, where the damages are liquidated.    It was not until some time after this assignment that Robert's demand was merged in a judgment when it would have been the subject of a setoff.    Terry then owned the claim, not Carter.    Counsel ought to have been able to distinguish between that case and the one at bar."    The pertinence of these remarks as applied to the facts stated is indubitable; but they have no value whatever as a precedent upon the question now in hand, because the claim of Roberts could not by any sort of reasoning have been held to arise out of the same transaction as Carter's demand, and as it did not arise out of the same or other contract and was not connected with the subject of Carter's action, it could not be a counterclaim.

In *Collier* v. *Ervin,* 3 Mont. 142, the word "transaction" was treated as though it meant the same as "contract," and upon the authority of *Wells* v. *Clarkson* it was categorically remarked that a "counterclaim founded upon a tort cannot be set off

against a claim founded upon contract." To appreciate the force of this *dictum* it is necessary to note the circumstances under which it was uttered, and these are, that the statute then in force (Codified Statutes 1871-72) authorized a counterclaim which consisted of "a cause of action arising out of the transaction set forth in the complaint," *etc.*, as distinguished from our present provision that a counterclaim may consist of "a cause of action arising out of the contract or transaction," *etc.* Whatever reason there might have been, under the statute and under the authorities as they then stood, for construing the term "transaction" as synonymous with "contract," can have no effect upon the clear implication of the present law that they are not synonymous.

Finally, in *Potter* v. *Lohse,* 31 Mont. 91, 97, 77 Pac. 419, the opinion quotes the above *dictum* of *Collier* v. *Ervin.* The quotation was unnecessary, if not irrelevant. The action was in conversion and it was sought to plead a judgment wholly unrelated to the foundation of plaintiff's claim and wholly unconnected with the subject of the action. It was properly held that this could not be done. This conclusion upon the facts was amply supported by the cases cited from New York; but the attitude of the New York courts upon the principles involved is illustrated by the authorities cited above.

According to the pleadings at bar, both parties ground themselves upon the relations created by the lease and bond, the execution of which was the beginning of the transaction between them. Then follow the entry into possession by the Waggoners; the occupancy of the premises by them, until the abandonment, as charged by the plaintiff, or until the eviction, as claimed by the defendants; the alleged default in the payment of rent; the re-entry by the plaintiff, including her seizure of the personal property of the Waggoners placed upon the premises under the authority of the lease; her refusal to surrender that property to them, and the divers other incidents and details which go to make up her right to sue and theirs to resist. Without taking each and all of these circumstances into account, the legal rela-

tions of the parties touching the entire transaction could not be fully determined; out of it the counterclaim arose and it was properly pleaded under subdivision 1 of section 6541. (*Gilbert* v. *Loberg,* 86 Wis. 661, 57 N. W. 982; *Vilas* v. *Mason,* 25 Wis. 310; *Littman* v. *Coulter,* 23 Abb. N. C. (N. Y.) 60, 7 N. Y. Supp. 1; *Advance Thresher Co.* v. *Klein, supra.*)

There is another consideration. In the late case of *First Nat. Bank* v. *Silver,* 45 Mont. 231, 122 Pac. 584, a counterclaim for the conversion of personal property was explicitly allowed in an action upon a promissory note, upon the theory that the implied contract of the taker to pay the reasonable value of the property brought the counterclaim within the provisions of subdivision 2 of section 6541, notwithstanding that no express waiver of the tort appeared on the face of the pleadings.

2. It is further contended by respondent that the counterclaim [5] was improper because it existed, if at all, in favor of Melvina Waggoner alone and it arose after the commencement of this action. While it is true that a cause of action pleaded as upon a right in favor of two or more persons jointly is not sustained by proof of a right in one of them (*Brown* v. *Daly,* 33 Mont. 523, 84 Pac. 883; *American Livestock & Loan Co.* v. *Great Northern Ry. Co., ante,* p. 495, 138 Pac. 1102), still the amended complaint at bar declares upon a transaction in which the obligations of the defendants were joint and several. It was in pursuance of these obligations that the Waggoners installed in the leased premises certain personal property for the taking of which the counterclaim is made; and although the evidence does disclose some statements on the part of Mrs. Waggoner that the property was bought by her, she being the person who undertook the active management of the hotel, a sufficient interest on the part of Mr. Waggoner is made to appear to satisfy the allegations of the counterclaim.

Touching the other feature, it is the settled law of this state [6, 7] that all issues are to be determined as of the date of the commencement of the action (*Rairden* v. *Hedrick,* 46 Mont. 510, 129 Pac. 498), and that "a counterclaim must be one existing

and matured for action in favor of the party asserting the same at the time the action was commenced wherein such counterclaim is sought to be pleaded.'' (*McGuire* v. *Edsall,* 14 Mont. 359, [8]   36 Pac. 453.)   Whether the cause of action constituting the counterclaim existed when the action was begun, depends upon whether a demand was necessary and whether any had been made; and whether demand was necessary depends in turn upon whether the plaintiff's re-entry of the leased premises was justified by the circumstances pleaded in authorization of it.   If the re-entry was not so justified, it was wrongful, and a conversion then occurred of whatever personal property belonging to the Waggoners she took into her possession (*Tuttle* v. *Hardenberg,* 15 Mont. 219, 38 Pac. 1070), without regard to when demand was made or whether any was made.   (*Eddy* v. *Kenney,* 5 Mont. 502, 6 Pac. 342; *Reynolds* v. *Fitzpatrick,* 23 Mont. 52, 57 Pac. 452.) If, on the other hand, the re-entry by the plaintiff was so justified, then no conversion of the personal property of the Waggoners occurred until demand and refusal.   Upon the question of justification for the plaintiff's re-entry, as well as upon the question of demand, the evidence was conflicting; it does not so clearly preponderate against the conclusion of justification that the trial judge could be put in error by adopting it.   This he may have done, and if he did, the order directing a retrial was proper.

Without making any allowance to the plaintiff on her claim for personal property let to the Waggoners and not accounted for by them, she was entitled under the instructions to accrued rentals in the sum of $150, subject to such offsets as were established under the counterclaim.   The verdict of the jury gave her $41, so that the counterclaim of defendants was allowed to the extent of $109 at the very least.   The sufficiency of the evidence to justify any such allowance is doubtful; at all events as to anything more than a very small fraction of the amount awarded, it was questionable in quality and met by contradiction.   The order granting a new trial might very well have been

made upon the ground of dissatisfaction by the court with the conclusions of the jury in this regard.

Error is claimed to have occurred in the giving of instruction No. 13, and in the refusal of plaintiff's proposed instructions [9] numbered 4, 6 and 6½, sufficient to warrant a retrial, but we cannot assent to this. The instructions should be taken as a whole, and instruction No. 13, taken in connection with the others, is not open to the attack made against it, while the essentials of offered instructions 4, 6 and 6½ were fairly presented to the jury.

The order appealed from is affirmed and the appeal from the judgment is dismissed.

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.

