McSHANE ET AL., RESPONDENTS, v. KENKLE ET AL., APPELLANTS.

[Submitted April 9, 1896. Decided May 4, 1896.]

MINES AND MINING—*Location—Sufficiency of discovery—Instructions.*—An instruction, in effect, that to constitute a discovery on a vein sufficient in law to justify a location, the vein must contain mineral, quartz or ore, of such a nature that a practical miner if he encountered it, would feel justified in following it up in the expectation of finding paying mineral in that particular seam upon which the discovery is made, is erroneous (1) in restricting a discovery to such a vein as "a practical miner" would feel justified in developing, instead of extending it to such a vein as the locator, whatever his vocation might be, would be justified in developing; and (2) in confining the discovery of paying mineral to "that particular seam" upon which the discovery is made, since a valid location may be be made by the discovery of a seam, with a well defined wall, bearing indications of mineral sufficient to justify the locator in following it up in expectation of finding a main body of paying ore within the limits of the claim as located.

INSTRUCTIONS—*Testimony.*—Where a statement of testimony is contained in an instruction, the statement should be so framed as not to subject the instruction to the charge of being the court's conclusion from facts disputed on the trial.

*Appeal from Sixth Judicial District, Meagher County.*

ACTION in adverse claim. The case was tried before HENRY, J. Plaintiff had judgment below. Reversed.

Statement of the case by the justice delivering the opinion.

This is an adverse claim suit, brought under section 2326 of the Revised Statutes of the United States, to determine the right of possession to certain premises in conflict. Plaintiffs' adverse claim is founded upon a quartz location called the "Grafton Lode," made May 12, 1891. Defendants' claim is founded upon a quartz location called the "Silver Safe Lode," located December 10, 1889. The ground in controversy is a little over eight acres. On April 19, 1890, a location called the "Rush Stone Quarry" was made by one Peter Rush. This stone quarry location includes a considerable portion of both the Silver Safe and Grafton lode locations, and in November, 1890, was conveyed by Rush and another to one Condon. Condon, in April, 1890, had also become an owner,

by deed of conveyance, of an interest in the Silver Safe lode, but had deeded his interest therein September 3, 1893, to one Kenkle, also a defendent in this suit.

The cause was tried to a jury. On the trial, the testimony went principally to the sufficiency of the original discovery of the Silver Safe lode, and to the question whether the representation work had been done for 1890, 1891 and 1892 on the Silver Safe lode, and whether certain work, which plaintiffs claimed Condon caused to have done in December, 1890, in the Rush stone quarry, did not amount, so far as defendants were concerned, to an abandonment on their part of the Silver Safe lode.

The jury found for the plaintiffs. Judgment was entered accordingly. Motion for new trial was made, based upon the insufficiency of the evidence to support the verdict, and upon errors of law. The motion was overruled, and defendants appeal.

*Max Waterman* and *H. G. McIntire*, for Appellants.

*Toole & Wallace*, for Respondents.

Hunt, J.—The principal question in this case turns upon the instructions. The court, after stating to the jury that three steps are indispensable to a valid location of a mining claim,—to-wit: (1) A discovery; (2) a marking of the boundaries; and (3) a record,—charged in relation to a discovery as follows :

"On this point you are advised that, to make a discovery, the would-be locator must have found a vein or crevice of mineral-bearing quartz, rock, or ore in place, with at least one well defined wall. A vein or crevice is said to exist when ore is found within defined boundaries, and, if the boundaries are well defined, slight evidence of ore may be sufficient; while, on the other hand, a clearly defined ore body, with one well defined wall, will be enough. The matter within the boundaries must be mineral-bearing quartz, rock, or ore; and, before a sufficient discovery to justify a location can be said to have

been made, there must have been found a vein, the course of which can be readily determined through the surrounding rock, and that this vein *must contain mineral, quartz, or ore of such a nature as that a practical miner, if he encountered it,* would feel justified in following it up, or developing it, from the reasonable expectation of finding paying mineral as the result of his developing the vein; so that mere water cracks or seams in the native rock or a mere stringer or offshoot, would not necessarily constitute a discovery. *In other words, if there was not enough found to justify a practical miner in entertaining a reasonable hope* of finally encountering paying mineral *in this particular crevice or vein, by developing or following it, then what was found would not be a discovery in law,—would not justify a location,—and any location made thereon would be invalid.* And this discovery must be so made before the boundaries are marked, for a location void when made, for want of *'sufficient discovery' as above defined,* could not be made good by the locator afterwards finding what would be in law considered a good discovery.''

The court afterwards stated and elaborated the plaintiffs' contention by the following instruction:  ''The plaintiffs insist that the ground was open to location in May, 1891, for these reasons:  First, while admitting the marking of the boundaries and record of the Silver Safe in December, 1889, they say that there was not, by Brooks or his co-locator, before they marked their boundaries, any such discovery as the law requires, i. e., as a *practical miner* would have felt justified in developing, with the reasonable expectation of finally finding paying mineral in *that particular seam.* They also insist that the persons claiming under the Silver Safe claim abandoned their claim in the fall of 1890, and tried to secure the ground under a different location, called the Rush placer or stone quarry claim; and they further say that the Silver Safe claimants forfeited their claim, if any they ever had, by failing to perform one hundred dollars' worth of work or improvements on and for the benefit of the Silver Safe location in the year 1890.''

In the use of words (italicized by us, for better illustration) restricting a discovery to such a crevice or vein as a practical miner alone would have felt justified in developing, with the reasonable expectation of finally finding paying mineral in that particular seam, the court clearly erred.   The error was not alone in laying down a rule limiting a valid discovery to such as a *practical* miner would feel justified in developing, with reasonable expectation of finding ore of commercial profit, present or prospective, but extended as well to the language of the charge which limited such justification to the expectation that paying mineral would be found in *that particular seam* upon which a discovery was made.

The statutes of the United States (Rev. St. §§ 2319, 2320), and the interpretations placed upon them by the supreme court, so far as we are advised, have never required as a prerequisite to the location of a mining claim that a locator discover rock in place bearing any of the precious metals named in the statute sufficient to justify persons pursuing any particular phase of any particular occupation in life only, as distinguished from any others, in expending time and means in prospecting and developing the ground within the limits of the location.

Any person may become a prospector by exploring a region of country for mineral; any person qualified by reason of citizenship in the United States may make a valid location of a mining claim by compliance with the law; and if the rock discovered by such a person is in place, and carries enough precious metal in it to justify the locator in expending his time and money in prospecting and developing the ground located, such a discovery is valid, and a location thereof may be made, no matter what the locator's vocation may be.   The law does not discriminate.   Its justification to locate extends to any citizens complying with its requirements; not only to the miner, whose experience lies in years of toil, but to the geologist, whose life has been in books of science, and to any other citizen, regardless of his calling.

When the validity of a mining location is assailed upon the

ground of no sufficient discovery, and there arises a question of whether the locator was justified in expending his time and money in prospecting and developing the ground located, then, of course, the testimony of mining men, including practical and scientific miners, geologists and mineralogists, is most valuable, to the end that the court and jury may correctly determine if the locator has made a discovery of rock in place carrying precious metal sufficient to warrant his expending time and money in prospecting and developing his located ground. Such testimony fixes the character of the rock, the nature of the vein or seam or crevice, the formation of the country about, whether there is a well-defined wall or not, the probabilities of the result of future development work, and in other material ways assists the court or jury in arriving at a just conclusion as to the existence or nonexistence of the facts plainly essential as bases for such justification. But, if the justification is found, it is a justification to the locator by reason of the existence of facts, mineralogical and geological; while, if such facts exist, the justification exists, and whether or not it is such a justification as the *practical* miner would avail himself of is not of vital import.

We find in the case of *Book* v. *Mining Co.*, 58 Fed. 106, a discussion of what constitutes a "discovery" within the meaning of the United States statute. More than ordinary respect is due to the opinion because it is rendered by Judge Hawley, who enjoys in a peculiarly high degree the respect of the courts and bar alike for his great learning upon the law of mining rights. We quote as follows from the opinion:

"What constitutes a discovery of a vein or lode, within the meaning of the statute? Section 2320, Revised Statutes, provides that 'mining claims upon veins or lodes of quartz or other rock in place bearing gold, silver, cinnabar, lead, tin, copper or other valuable deposits, heretofore located, shall be governed as to length along the vein or lode by the customs, regulations and laws in force at the date of their location. A mining claim located after the tenth day of May, 1872, whether located by one or more persons, may equal, but shall

not exceed, 1,500 feet in length along the vein or lode; but no location of a mining claim shall be made until the discovery of the vein or lode within the limits of the claim located.' The words, 'vein or lode,' in the last clause of this statute, were evidently intended to apply to such veins or lodes as were described in the first section, and to have the same meaning, viz. a vein or lode 'of quartz or other rock in place bearing gold, silver,' etc. The statute was intended to be liberal and broad enough to apply to any kind of lode or vein of quartz or other rock bearing mineral, in whatever kind, character, or formation the mineral might be found. It should be so construed as to protect locators of mining claims, who have discovered rock in place bearing any of the precious metals named therein, sufficient to justify the locators in spending their time and money in prospecting and developing the ground located. It must be borne in mind that the veins and lodes are not always of the same character. In some mining districts, the veins, lodes, and ore deposits are so well and clearly defined as to avoid any question being raised. In other localities, the mineral is found in seams, narrow crevices, cracks, or fissures in the earth, the precise extent and character of which cannot be fully ascertained until expensive explorations are made, and the continuity of the ore and existence of the rock in place bearing mineral is established. It never was intended that the locator of a mining claim must determine all these facts before he would be entitled, under the law, to make a valid location. Every vein or lode is liable to have barren spots and narrow places, as well as rich chimneys and pay chutes, or large deposits of valuable ore. When the locator finds rock in place containing mineral, he has made a 'discovery,' within the meaning of the statute, whether the earth or rock is rich or poor, whether it assays high or low. It is the finding of the mineral in the rock in place, as distinguished from float rock, that constitutes the discovery, and warrants the prospector in making a location of a mining claim.''

It will be observed that throughout the language of Judge

Hawley he does not establish any standard of judgment by which to warrant a justification, except the existence, and expected existence, of geological or mineralogical facts from which certain reasonable conclusions are authorized to be drawn. The probable conduct of the *practical* miner or his beliefs are not regarded as rules or tests of the justification for the guidance of locators. Indeed, throughout his whole succinct and carefully considered statement of the law, as quoted, the learned judge does not use the word "miner" at all, but lays stress upon the liberality of the statute, which protects the locator in his discovery and location if rock in place is found containing precious metals, sufficient to justify such *locator* in prospecting and developing the ground located.

Nor must the discoverer expect to find paying mineral in that particular crevice or vein or seam in which he finds his rock in place bearing metal, before he can make a valid location. This is plain by a study of Judge Hawley's opinion, by the law generally, and by the light of common knowledge. If a prospector in a mining region discover a seam with a well-defined wall, bearing indications of mineral sufficient to justify him in spending his time and money in following it, in expectation of finding a main body of ore of commercial value within the ground located, a valid location of a mining claim may be made, and the expectation need not be confined to finding paying mineral in the *particular* seam upon which the discovery is made.

Judge Beatty, of Idaho, in *Railway Co.* v. *Migeon*, 68 Fed. 811, after quoting from *Book* v. *Mining Co.*, *supra*, said that the late decisions establish "the liberal rule that it is not necessary, to the location of a valid claim under section 2320, that ore of commercial value in either quantity or quality must first be discovered within its limits. While the practical observer will commend this rule, it must be reasonably applied. To apply it to every seam or fissure which may be filled with matter containing traces of the precious metals, whether in or remote from mineral country, whether valuable or worthless as a mining claim, would be a perversion of a

liberal law. The vein or lode which the statute directs must be discovered before the location of a claim, must be one that, from all its indications, has a present or prospective commercial value, for only 'lands valuable for minerals' are subject to appropriation as mineral claims.''

The case at bar well illustrates the force of these views. It is in evidence that in the vicinity of the Silver Safe location, at Neihart, the veins increase as they go down; that the seams (sometimes called ''stringers'' in that district) are regarded as in close proximity to larger veins of mineral; that they are usually supposed to lead to veins, but sometimes lead from them; that in that camp some ore-producing mines, particularly one large producer, were only two or three inches wide in their main veins at the surface. This evidence tends to show that the district is one where the mineral is found in seams ''the precise extent and character of which cannot be fully ascertained, until expensive explorations are made, and the continuity of the ore and existence of the rock in place bearing mineral is established.'' (*Book* v. *Mining Co.*, *supra.*)

Oftentimes, in such districts, a discovery is made on a ''seam,'' a term often used synonymously with ''stringer,'' and commonly understood by miners to be a crack or crevice filled by mineral deposit, and occurring in the country rock, and by means of which the prospector anticipates being led to an ore body or deposit of commercial value. Upon such a seam the evidence in this case tends to show the Silver Safe discovery was made, and, if so made, the location thereof was valid in law.

The pleadings do not positively aver an abandonment of the defendants' location, but testimony was introduced upon that point, and instructions were given covering the law of abandonment. Whether it is necessary to specially plead abandonment we will not decide. The latest utterance of the supreme court of California, citing earlier cases, is in *Trevaskis* v. *Peard* (March, 1896) 44 Pac. 246, where it was held that evidence of abandonment may be given without a special

plea under a denial of title. Where, however, abandonment is relied upon, it is safer to plead it.

The appellants complain that the instructions assumed that certain testimony was given which was not. Without going into any discussion of the instructions complained of, we think that, under our practice, courts should avoid any statement of testimony so framed as to subject the instructions to any well-founded charge of being the court's conclusion from facts directly disputed on the trial.

The defendants' objection to the form of the verdict could not have operated to their prejudice in this action.

Judgment and order denying a motion for a new trial reversed, and cause remanded, with directions to grant a new trial.

*Reversed.*

PEMBERTON, C. J., concurs.