TANNER, Respondent, *v.* SMITH, Appellant.

(No. 7,236.)

(Submitted May 5, 1934. Decided June 9, 1934.)

[33 Pac. (2d) 547.]

*Messrs. Slattery & Tighe,* for Appellant, submitted a brief; *Mr. John L. Slattery* argued the cause orally.

*Messrs. West & Stromnes* and *Mr. W. F. O'Leary,* for Respondent, submitted a brief; *Mr. Einar Stromnes* and *Mr. O'Leary* argued the cause orally.

MR. JUSTICE STEWART delivered the opinion of the court.

This is an appeal from a judgment entered in an action for damages on account of personal injuries alleged to have been sustained in an automobile collision in the city of Great Falls at the intersection of Third Street and Central Avenue.

On the evening of August 3, 1931, plaintiff was riding north on Third Street in a car driven by her husband. The car was a converted pick-up truck, with only one seat and a door on each side. Plaintiff was riding on the seat to the right of the driver. They proceeded north along Third Street, which runs north and south, to the point where that street crosses Central Avenue, an east and west thoroughfare. This intersection is near the center of the city and is equipped with traffic signals. As plaintiff and her husband approached from the south, they observed that the traffic signal was set against them, or indicated that the street was for the moment closed to traffic. The husband stopped the car on the south side of the intersection and near the east side of Third Street. At approximately the same time the defendant approached the intersection from the north. She stopped on the west side of Third Street, and both waited for the traffic signal to change.

Defendant was driving a new Studebaker car and intended to turn east on Central Avenue.

When the signal changed to "Go," both cars proceeded to cross Central Avenue, the Tanner car from the south going north and the Smith car from the north going south. When the plaintiff's car had reached a point just beyond the middle of the intersection and a little north of the center line on Central Avenue, it was struck by the car driven by defendant. The left front fender and the bumper of the defendant's car rammed the plaintiff's car near the center of the left front door. At the time of the collision the defendant's car was traveling at about twelve or fifteen miles an hour, while plaintiff was driving in one of the lower gears about eight miles per hour.

Mr. Tanner, husband of plaintiff, testified that when he proceeded to cross the intersection, the traffic was clear in front of him, and that he determined it was safe to cross; that he looked to the right and to the left; that he saw the defendant's car over on the northwest corner of Third and Central, headed south facing him; and that he then proceeded to make the crossing bearing a little east of the center of Third Street. He testified that when he first observed that the defendant's car was coming towards him, his car was about the middle of the street-car track, and that he thereafter traveled about seven feet before the collision; that when he first saw that defendant was coming towards him, he made an attempt to get out of her way but could not do it, and then applied the brakes and stopped.

Defendant testified that she stopped before attempting to cross Central Avenue until she got the "Go" signal; that there were some little children passing and that she was watching them; that after the children had passed she started her car and put her hand out of the window on the left-hand side; and that she could not say exactly how far she had driven before the collision with plaintiff's car. From her testimony it is apparent that she did not observe the proximity of the Tanner car until she was upon it.

In her complaint plaintiff alleges that defendant was "proceeding * * * without due, reasonable, or any care" in violation "of plaintiff's rights and certain city ordinances." She also set out the several city ordinances which were designed for the regulation of traffic, and which were in full force and effect in the city of Great Falls at the time of the accident.

In substance, the ordinances defined "reckless driving," imposed the duty upon a motorist to drive to the right side of the street and to keep to the right in crossing intersections. They also provided that "when two vehicles enter an intersection, the operator of the vehicle on the left shall yield the right of way to the vehicle on the right. The operator of a vehicle within an intersection intending to turn to the left across the path of any vehicle approaching from the opposite direction may make such left turn only after giving the signal as required by law, and after affording a reasonable opportunity to the operator of such other vehicle to avoid collision."

Plaintiff alleged that defendant violated all the above-mentioned ordinances; that because of such violation defendant ran into the car in which plaintiff was riding; and that as a result thereof plaintiff was severely injured.

Defendant's answer, in so far as parts pertinent to the matter involved in this appeal are concerned, is in effect a general denial.

Plaintiff prayed for damages in the sum of $25,315. The jury returned a verdict for plaintiff in the sum of $10,000, and judgment was entered in accordance therewith. Defendant moved for a new trial, and the motion was denied.

Defendant has assigned eight specifications of error. The first one is that "the court erred in unduly restricting the cross-examination of the medical witness, Dr. Mayland." The doctor had testified on cross-examination that he knew approximately how many night calls he had made in treating plaintiff's injuries. He was then asked the question, "How many?" Whereupon the court said: "That is consuming time for nothing. The witness has given his approximate, $1,057,

which includes about $150 for medicine. Pass to something else." To the ruling and statement of the court objection was made and exception noted.

It appears from the record that the substance of the testimony thus sought to be elicited had already been given by the doctor. In the case of *Conway* v. *Monidah Trust*, 51 Mont. 113, 149 Pac. 711, 712, this court held that: "The opportunity to cross-examine the witnesses of the opposing party is a matter of right, but the latitude of such examination is very largely in the discretion of the trial court, with which this court will not interfere, save in case of a manifest abuse. [Citing cases.] In some of the instances complained of, the inquiries were not proper cross-examination; in others, the information sought either had been, or thereafter was, elicited; and in none does it appear that prejudice was suffered nor that abuse of discretion is exhibited by the errors assigned in this connection." (See, also, *State* v. *Sedlacek*, 74 Mont. 201, 239 Pac. 1002.)

In the instant case it does not appear that the court abused its discretion. Neither does it appear that defendant suffered any prejudice from the ruling. The answer to the question asked would have constituted a mere repetition of testimony already given. In the circumstances the court had a right to order counsel to proceed to some other line of inquiry. (*Conway* v. *Monidah Trust*, supra.)

Defendant contends that the court erred in admitting, over ▇▇▇ objection, testimony as to plaintiff's activity in fraternal organizations. Members of these organizations were called as witnesses and permitted (over defendant's objection) to testify concerning plaintiff's activity in the affairs of the organizations. Defendant asserts that the only purpose of introducing such testimony was to prejudice the jury against defendant. We are unable to agree with this contention. The record discloses that the evidence was offered for the purpose of showing plaintiff's general physical condition and disposition prior to the accident. It is apparent that such evidence was pertinent to the issues involved. One of the principal

questions in controversy was that relating to the extent of the injuries suffered by plaintiff as a result of the accident. Evidence of social activities prior to the alleged injuries and her inability to engage in and enjoy them thereafter had a direct bearing upon that question. Even if it were conceded that this evidence was irrelevant and had no legitimate purpose in the case, we are unable to see how it could have prejudiced the defendant. The court in its instructions to the jury withdrew from their consideration "any and all evidence pertaining to the activity or normal activity of the plaintiff in fraternal circles."

Error is predicated upon the court's refusal to give defendant's proposed instruction No. 1, which read as follows: "The court instructs you, gentlemen of the jury, that if you find from all the facts and circumstances, as shown by the evidence in this case, that the plaintiff's injuries were the result of a pure and unavoidable accident, such as could not ordinarily be anticipated, and not the result of the negligence of either the defendant or the plaintiff, then the plaintiff cannot recover, and your verdict must be for the defendant."

The court properly refused to give the offered instruction. What is an unavoidable accident? By common acceptation, "unavoidable accident" means a casualty which happens when all means which common prudence suggests have been used to prevent it. (8 Words & Phrases, First Series, p. 7149, and cases cited.)

An examination of the record in this case discloses the fact that the accident occurred in broad daylight on a wide street with no other vehicles in or near the intersection, and an unobstructed view, and so far as the evidence discloses, no intervening or untoward circumstances present to account for it. There was no suggestion of defective mechanism. The record in no uncertain manner shows that the defendant drove her car into the side of the other car. Her explanation was as follows: "I stopped there at that intersection and waited just a very few moments until I got the 'Go' signal; there were some little children passing and I was watching them. After

the children had passed, as I started my car I put my hand out of the window on the left-hand side, the usual precaution to indicate turning to the left, to the east, as I intended to drive east on Central Avenue, and it was my intention to make a turn at the center of the intersection between Third Street and Central Avenue to the east, to my left, on the side I was driving. To indicate that I intended to make that left-hand turn at that place I put my hand out of my window on the left-hand side on which I was driving. My driving wheel is on the left-hand side of my car. After I left, after the 'Go' signal came on, I drove south on Third Street in that intersection right to the button and turned to the east, or the left, on the south side of the button, which is half way across the street, and I couldn't say exactly how far I had driven east, but I had gotten past or east of the intersection, and I didn't see anything until the Tanner car and myself came together, and I heard the crash, and I immediately stopped my car."

It cannot be said that all means to prevent accident that common prudence, to say nothing of the city ordinances, demanded were observed. There is nothing in the record to characterize the accident as unavoidable. It happened through the fault of someone, and it was the duty of the court to refuse the offered instruction, predicated, as it was, upon a premise not fairly founded upon evidence. Instructions "postulating facts not shown by the evidence and authorizing indefinite and misleading inferences" are "properly refused." (*State* v. *Sheldon,* 54 Mont. 185, 169 Pac. 37; see, also, *Lindsay* v. *Kroeger,* 37 Mont. 231, 95 Pac. 839; *Bullard* v. *Smith,* 28 Mont. 387, 72 Pac. 761.)

Defendant argues that the above instruction was proper in view of the necessary instructions on the subject of contributory negligence. We do not see the force of the argument. Contributory negligence is a thing quite apart from unavoidable accident. The court instructed very fully and fairly on the subject of contributory negligence, so that further instruction was not necessary on that subject, even if the offered instruction had been pertinent to that issue.

Defendant complains of the court's instruction 1c, which reads as follows: "The plaintiff in this action has testified that she is suffering from an aggravated and enlarged hernia, and that she will so suffer the rest of her life. Medical testimony has been submitted to the effect that she is suffering from a large and aggravated hernia; that by reason thereof she is compelled to take medicine at least twice a day to produce bowel movements, and that such condition will become progressively worse, and further that said hernia is incurable. Therefore if you believe by a preponderance of the evidence that the plaintiff is so suffering, and that such suffering is the result of the injuries sustained by her, if any, from the automobile collision alleged in the complaint, you may take this injury, together with the other injuries sustained by her, if any, into consideration in awarding the plaintiff such damage as you may deem she is entitled, if any, the whole thereof not exceeding the amount alleged in the complaint."

Defendant objected to the instruction upon the ground "that it is a comment upon the testimony of the plaintiff and also of the medical witness; second that it relates to matters not in issue, because not alleged in the complaint or denied in the answer; third, it is argumentative, by the use of the word 'therefore'; fourth, it assumes the existence of other injuries; fifth, it is a comment on the evidence; and, sixth, it is not warranted by the evidence."

We find no merit in this specification of error. The court did not assume to cover the whole case in this one instruction. It was only one of several. It is elementary that "instructions must be viewed as a whole where error in giving and refusing certain of them is relied on for a reversal of the judgment." (*Scott* v. *Waggoner*, 48 Mont. 536, 139 Pac. 454, L. R. A. 1916C, 491; *Cannon* v. *Lewis*, 18 Mont. 402, 45 Pac. 572.)

When the instructions are read as a whole, it is apparent that defendant could not possibly have been prejudiced by anything contained therein.

In conformity with the foregoing principle, the court instructed the jury as follows: "You should consider these in-

structions as a whole. You have no right to consider any part or parts of them to the exclusion of other portions thereof.''

The particular instruction under consideration, when read in conjunction with all the other instructions given by the court, fairly presented the case to the jury. This instruction cannot be said to contain comments on the evidence in the forbidden sense. It must be borne in mind that the facts of the accident were not contradicted in any essential particular, and the only evidence of the extent, seriousness, and permanency of plaintiff's injuries was that given by her own witnesses. These were the facts touched upon in the instruction, and because they were not controverted, contradicted or even minimized by the testimony offered by defendant, the rule forbidding instructions containing a comment on the evidence does not apply. (*Hogan* v. *Shuart,* 11 Mont. 498, 28 Pac. 969; *First Nat. Bank* v. *Montana C. L. Co.,* 72 Mont. 419, 234 Pac. 256; *McShane* v. *Kenkle,* 18 Mont. 208, 44 Pac. 979, 56 Am. St. Rep. 579, 33 L. R. A. 851; *Tyler* v. *Hall,* 106 Mo. 313, 17 S. W. 319, 27 Am. St. Rep. 337; 14 R. C. L. 760; 1 Blashfield on Instructions to Juries, 2d ed., p. 292.) In reality the only question tendered to the jury by the evidence was that relating to the extent of plaintiff's injuries and the amount of damages fairly assessable therefor.

Defendant insists that the verdict of the jury is excessive. In this connection it is suggested that the jury was improperly influenced by the injection of evidence to the effect that defendant carried liability insurance. In support of this contention she argues that ''it was prejudicial error for the plaintiff to introduce in evidence, deliberately or otherwise, the purported fact that appellant, at the time of the accident, was insured against liability for damages arising * * * from the collision.''

Plaintiff's husband testified on direct examination that immediately after the defendant had rammed his car, she (defendant) backed her car from the point of collision and started to drive away, and that he went around his car and stopped her; that he asked her ''what kind of driving that was,'' to

which she replied: "Never mind, I am insured and the company will take care of me; my name is Anne Smith, you will find me in the South Side Stocking Shop." The defendant did not object to this testimony, but on cross-examination of plaintiff's husband the subject was gone into quite thoroughly by defendant's counsel. The question of insurance was brought even more forcibly to the attention of the jury by the cross-examination of the witness than it had been on his direct examination. Again, the defendant on her direct examination testified concerning her alleged statements and denied that she had made the statement to the effect that she carried liability insurance.

Plaintiff contends that, since it appears from the record that defendant failed to object to this evidence, she cannot now predicate error upon its admission. In support of this view she cites the case of *Trogdon* v. *Hanson Sheep Co.*, 49 Mont. 1, 139 Pac. 792, where it was held that "error in rulings on the admission of evidence, to which no exceptions were saved, will not be considered on appeal." We deem it unnecessary to determine the merit of such a rule in this case. Regardless of whether defendant objected to the evidence, we think it was clearly admissible in the circumstances of this case.

In the recent case of *Vonault* v. *O'Rourke*, ante, p. 92, 33 Pac. (2d) 535, decided May 23, 1934, this court had the general subject under consideration. There we quoted what we consider the proper rule, and said: "The general rule on the subject is discussed in an annotation to the case of *Stehouwer* v. *Lewis*, 74 A. L. R., found on page 849. It is as follows: 'The rule is almost universally recognized that in actions for personal injuries or death the fact that the defendant is protected by indemnity insurance against liability for damages cannot, directly or indirectly, be injected into the case by evidence, argument or remarks, so as to influence the jury, and the violation thereof is ordinarily held to be reversible error.'" In accordance with that rule, this court has often condemned the injection of the insurance feature into a personal injury case. (*Robinson* v. *Woolworth Co.*, 80 Mont. 431,

261 Pac. 253; *Wilson* v. *Thurston Co.*, 82 Mont. 492, 267 Pac. 801; *Wilson* v. *Blair*, 65 Mont. 155, 211 Pac. 289, 27 A. L. R. 1235.)

However, there are certain well-defined and universally followed exceptions to the general rule as stated above. In a general way the rules giving rise to such exceptions may be stated as follows: "That, if the evidence sought to be introduced is admissible upon an issue or matter materially involved in the case, it cannot be excluded on the ground that it may tend to prove the fact of defendant's insurance, which the plaintiff could not otherwise prove." (Annotation in 74 A. L. R. 854; *Lahti* v. *McMenamin*, 204 Cal. 415, 268 Pac. 644.) Thus it is generally held that evidence that the defendant is insured may be properly admissible where it is a part of a conversation involving an admission of responsibility by the defendant. (*Schlenker* v. *Egloff*, 133 Cal. App. 393, 24 Pac. (2d) 224; *Dullanty* v. *Smith*, 203 Cal. 621, 265 Pac. 814; *Walter* v. *England*, 133 Cal. App. 676, 24 Pac. (2d) 930; see, also, annotations in 74 A. L. R. 850, and in 56 A. L. R. 1418.)

In this case the statement made by the defendant to plaintiff's husband at the time and place of the accident may be very properly considered as an admission of negligence. (*Herschensohn* v. *Weisman*, 80 N. H. 557, 119 Atl. 705, 28 A. L. R. 514; *Vonault* v. *O'Rourke*, supra.) It would also seem that such statement was admissible as a part of the *res gestae*. (See sec. 10511, Rev. Codes 1921.)

The most serious assignment of error, and one upon which defendant based her motion for a new trial and now seeks reversal here, is that "the verdict of the jury is excessive, appearing to have been given under the influence of passion or prejudice." As stated above, the jury awarded plaintiff $10,000, and judgment was entered for that sum.

Upon this point defendant cites, and relies upon, the case of *Wise* v. *Stagg*, 94 Mont. 321, 22 Pac. (2d) 308, 312. In that case this court reduced the judgment from $6,500 to $4,000.

In the present case the testimony of plaintiff and her husband, and Dr. Mayland, is to the effect that, although plaintiff was affected with hernia, she was in a fair state of health just prior to the accident; that she was able to do, and did do, all her own housework; that after the accident the hernia which plaintiff had previously suffered was greatly enlarged; that the pain of the hernia thereafter increased considerably; that at the time of the trial, twenty-one months after the accident, she could only do light housework, sitting down; that the enlarged hernia was increasingly painful and embarrassing; that prior to the accident she did not have constipation, but that since that event she could not have a normal bowel movement without taking a laxative, and that she is constantly taking laxatives in progressively increasing amounts; that she is nervous and irritable; and, finally, that the permanent injury which she sustained (the enlarged hernia) is incurable and will grow constantly worse.

This court has consistently adhered to the rule that "it is peculiarly within the province of juries to fix the amount of compensation to be paid for personal injuries, unless the result of their deliberation is such as to shock the conscience and understanding of the court." (*Wise* v. *Stagg,* supra; *Kelley* v. *John R. Daily Co.,* 56 Mont. 63, 181 Pac. 326; *Staff* v. *Montana Petroleum Co.,* 88 Mont. 145, 291 Pac. 1042.) But this court, in common with courts generally, has not hesitated to scale judgments in cases where the amount has been so great as to shock the conscience and understanding of the court. (See *Allen* v. *Bear Creek Coal Co.,* 43 Mont. 269, 115 Pac. 673; *Forquer* v. *North,* 42 Mont. 272, 112 Pac. 439; *Wise* v. *Stagg,* supra.)

In the case at bar we are impressed by the claim that the award of the jury was so excessive as to effect the above result. In addition to the evidence of plaintiff's injuries to which we have already referred, the record discloses the further facts that plaintiff was a woman of approximately sixty years; that she had been suffering from a hernia long before the accident involved in this case; that for several years she

had been more or less constantly receiving medical treatment therefor; and that she had undergone at least two unsuccessful operations within a few years immediately prior to the accident.

After a careful reading and comparison of all the evidence upon this point, we are of the opinion that the sum of $7,500 is a maximum sum sufficient to fully compensate plaintiff for the damages sustained.

The cause is remanded to the district court, with directions to grant a new trial, unless within ten days after the remittitur is filed with the clerk of that court, the plaintiff shall file her written consent that the judgment for damages may be reduced to $7,500. If such consent is given, the judgment will be modified accordingly as of the date of its original entry, and, as modified, will stand affirmed. If plaintiff does not consent to such reduction of damages, the court is directed to grant a new trial.

In case the reduction is accepted by respondent, each party shall pay her own costs on this appeal; but in case the reduction be not accepted and the case finally stands reversed, appellant shall be entitled to costs as in ordinary reversals under the rules of this court.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES MATTHEWS and ANDERSON concur.

MR. JUSTICE ANGSTMAN: I do not agree that the verdict is excessive. The size of the verdict does not shock my conscience. The jury was asked to return a verdict of $26,315. It returned one for $10,000. It did not appear excessive to the trial judge who denied the motion for a new trial.

Plaintiff, who at the time of the accident was about fifty-eight years of age, incurred doctor and medical expense in the sum of $1,057; she was confined in bed for a period of four months because of the injuries; her back was injured so badly that she could not use a bedpan and required assistance to go to the lavatory. The injuries caused her great pain; she sustained injuries to her head, causing her to have

dizzy spells; she continues to suffer from nervousness; the hernia which she had before the accident did not prevent her from doing her usual housework and taking part in the activities of fraternal organizations; she is now unable to attend to her household duties or participate in the activities of those organizations. Prior to the accident the hernia was about the size of an ink bottle, but after the accident it was as large as a baby's head; it has caused her continual pain since the accident and, according to the uncontradicted evidence, will become progressively worse. Her condition, according to uncontradicted medical testimony, is permanent and will be continuous during her lifetime. We have sustained a verdict for $15,700 where the injuries were not nearly so severe and painful as in this case. (*Staff* v. *Montana Petroleum Co.*, 88 Mont. 145, 291 Pac. 1042.)

The judgment, I think, should be affirmed.