ROBERT L. WYANT, Plaintiff and Respondent, v. ED-
WARD D. DUNN, d/b/a ANACONDA DISPOSAL SERV-
ICE, and CHARLES F. McCARTHY, JR., Defendants and
Appellants.

No. 10216.

Submitted December 6, 1961. Decided February 13, 1962.
Rehearing denied March 7, 1962.
368 P.2d 917.

Knight & Dahood, Anaconda, Wade J. Dahood, Anaconda, argued orally, for appellants.

Emmet T. Walsh, Anaconda, argued orally, Wellington D. Rankin and Arthur P. Acher, Helena, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal by the defendants, Edward D. Dunn and Charles F. McCarthy, Jr., from a verdict and judgment in favor of the plaintiff, Robert L. Wyant, in the sum of $15,195. The action is to recover damages for the wrongful death of the plaintiff's minor son, Mark Eric Wyant, killed by a garbage truck driven by the defendant, Charles F. McCarthy, Jr., and owned by the defendant, Edward D. Dunn.

The complaint alleges: That at all the times material hereto, the defendant, Edward D. Dunn, was engaged in the business of operating a garbage and disposal service in Deer Lodge County, Montana; that the defendant, Charles F. McCarthy, Jr., was in the employ of Edward D. Dunn; that on February 17, 1959, Mark Eric Wyant, deceased, was a boy of five years of age and was the plaintiff's son; that on February 17, 1959, in the City of Anaconda, Montana, through the negligent operation of a garbage truck, owned by the defendant, Edward D. Dunn, and while in the course and scope of his employment, the defendant and driver, Charles F. McCarthy, Jr., ran into and fatally injured the plaintiff's minor son, Mark Eric Wyant, while the latter was crossing a public street; that the defendant, Charles F. McCarthy, Jr., was negligent because he (1) failed to yield the right-of-way to the plaintiff's son, (2) failed to keep a proper lookout for pedestrians, (3) drove at an unreasonable and excessive rate of speed through an intersection which was snow packed and icy, and which had deep ruts in the respective lanes of traffic, (4) drove without windshield wipers, (5) drove with defective brakes, (6) drove without a speedometer, (7) failed to use due caution, and (8) "failed to

equip said truck with wheel chains, or snow tires, so that said vehicle would be under the reasonable control of the driver;'' that the defendant, Charles F. McCarthy, Jr.'s, negligence was the proximate cause of Mark Eric Wyant's death; and that the plaintiff was injured in the sum of $30,195.

The defendants denied that the death of Mark Eric Wyant was the result of their negligence and alleged affirmatively that ''the accident involving Mark Eric Wyant was unavoidable'' and that the mechanical defects of the truck were not the proximate cause of the accident.

The evidence may be summarized as follows:

On February 17, 1959, at approximately 3:15 P.M., five-year-old Mark Eric Wyant was on his way to the grocery store for his mother. He was walking south in the eastern crosswalk of the intersection of Park Street and Washington Street in Anaconda, Montana. (Park Street runs east and west and is an arterial highway and through street; Washington Street runs north and south and, as it intersects Park Street, is a stop street.)

At the same time, the defendant, McCarthy, who was driving his employer's loaded two-ton 1954 Chevrolet garbage truck east on Park Street, passed through the intersection into the crosswalk, ran into and killed decedent herein. The speed of the garbage truck as it passed through the intersection and crosswalk was between 10 and 25 miles per hour. The plaintiff's witnesses testified that the speed was 20 to 25 miles per hour; the defense witnesses that the speed was 10 to 15 miles per hour. An Anaconda city ordinance provides that no person shall drive a vehicle at a greater speed than 15 miles per hour through any intersection. (See Codified Ordinances of the City of Anaconda, 1940, § 350.)

The evidence shows that the decedent was struck on the south side of Park Street, in the eastern lane of traffic. Actual measurements taken after the accident indicate that the decedent's body lay six feet, nine inches from the eastern edge

of the crosswalk; his feet in a northeasterly direction and his head in a southwesterly direction. Blood from the decedent's mouth, where he rested, was three feet, nine and one-half inches south of the centerline of Park Street.

Immediately following the accident, examination of the truck disclosed that it was mechanically defective. It had no windshield wipers, defrosters, speedometer, brakes, horn, heater, rear directional lights, or any snow tires or chains. A piece of card board replaced the glass in the right door and only the fly window could be used by the driver to look to the right.

The evidence shows that the windshield was covered with snow and ice which obstructed visibility from the cab of the truck.

The weather was cold and snowing slightly and the intersection in question was snow-packed and icy and had deep slippery icy ruts eight to nine inches deep in both the east and west lanes of traffic.

The defendant McCarthy testified that, before he entered the intersection, he saw the decedent, ''four or five car lengths'' away; that the decedent was standing in the street ''four or five'' feet from the curbing of the northeast corner of the intersection; that the decedent was waiting for the westbound traffic to pass; that there was another child in the vicinity— a ten-year-old girl standing on the sidewalk; that his, McCarthy's, vision was good and unobstructed; that the decedent was clearly visible; that there was one car in the western lane of traffic; that when he next saw the decedent, the garbage truck was ''two or three'' feet from the crosswalk and the decedent was running across the ruts in the crosswalk; that as he entered the intersection, he did not pay any attention to the decedent in the crosswalk because he, McCarthy, was looking to his right through the right fly window to see if any cars were coming into the intersection north on Washington Street; that when he last saw the decedent, the garbage truck was into the crosswalk and the decedent was still some three or four feet

from the truck; that the front end of the garbage truck was in full view; that he never saw the front end or any other part of the truck come in contact with the decedent; that he, McCarthy, made every effort to avoid hitting the child although he did not apply his brakes; and that he did not know that he had hit the decedent until he had driven a half block down Park Street and saw the decedent through the rear view mirror.

There were many discrepancies between the defendant, McCarthy's, trial testimony and his testimony at the coroner's inquest. For example, at the coroner's inquest, in testifying as to when he first saw the decedent, after he, McCarthy, had entered the intersection, McCarthy stated: "I never noticed the boy until I was already just practically through the crosswalk." At the trial McCarthy testified that he saw the decedent before he, McCarthy, had entered the intersection. There was also a conflict in the testimony given by McCarthy as an adverse witness and the testimony given by him in his case in chief.

Based upon the evidence submitted to them, the jury returned a general verdict for the plaintiff in the sum of $15,195 plus interest at the rate of six per cent from February 17, 1959. However, on a motion for a new trial, the court amended the judgment, striking the interest allowed by the jury. Because the trial court amended the judgment striking the interest, the plaintiff herein, Robert L. Wyant, brings a cross assignment of error. The defendants herein appeal from the judgment.

Seven errors are assigned for our consideration.

■ 1. The defendants contend that the evidence is insufficient to sustain the verdict. We have given careful consideration to all the evidence in the case and, in our view, it was sufficient to warrant the court in submitting the cause to the jury.

■ "* * * The rule is fundamental that if there be substantial evidence in the record to support the findings of

the trier of the facts, we will not interfere with its ruling. Where the evidence is conflicting we will view it in the light most favorable to the prevailing party and consider that proved which the evidence tends to prove, and this is true even though we believe that there may be sufficient evidence to warrant a finding the other way. In re Dillenburg's Estate, 136 Mont. 542, 349 P.2d 573.'' Lacey v. Harmon, 137 Mont. 489, 353 P.2d 96, 98.

■ 2. The defendants contend that it was prejudicial and reversible error for the trial court to permit the plaintiff's counsel, over objection, in their argument to the jury, to suggest a mathematical basis for fixing damages for loss of love, affection, and companionship on a per diem basis.

In support of this contention, the defendants cite Botta v. Brunner, 26 N.J. 82, 138 A.2d 713, 60 A.L.R.2d 1331. In that case, the New Jersey court held that the use of an arithmetical per diem formula argument anent pain and suffering constituted prejudicial and reversible error. However, the Botta decision was decided under the New Jersey rule that neither court nor counsel are allowed to refer to the damage clause of the complaint.

In Montana, we have no such restriction. On the contrary, R.C.M.1947, § 93-5101, subd. 1, provides:

"The party on whom rests the burden of the issues may briefly state his case, and the evidence by which he expects to sustain it."

It is the common practice in this state for the entire complaint including the prayer thereof, to be read as the first order of proceedings after the jury has been sworn. It is also common practice for the trial court to instruct the jury that if its verdict is for the plaintiff, it should not be in excess of the particular amount specified in the prayer of the complaint. Such instruction was given in this case.

The preferable rule in this state, in view of our statute and the custom and practice thereunder, is to leave the propriety

of counsel's use of such argument to the sound discretion of the trial court.

■ We believe and hold that inasmuch as this type of argument is used only for illustrative purposes, that the trial judge, in permitting such argument, instruct the jury (as he did in this case) that any remark of counsel not sustained by the evidence is to be disregarded.

In any event, whether improper argument requires reversal depends upon whether prejudice has been engendered which prevents a fair trial. Upon examining the record, we are unable to say that any prejudice resulted.

■ 3. The defendants next contend that the trial court erred in denying the defendants an opportunity to re-examine the defendant immediately following his adverse examination by the plaintiff.

The record discloses the following: The plaintiff in his case in chief called the defendant McCarthy to the witness stand, and cross-examined him as permitted by R.C.M.1947, § 93-1901-9. Before the defendant McCarthy had left the stand, counsel for the defendants claimed the right to re-examine him and moved the court to be allowed to do so. The court refused the motion and an exception was taken.

Under R.C.M.1947, § 93-1901-9, any party in a civil case may call an opposite party to the witness stand as an adverse witness and cross-examine him, the same as if the witness had originally been called by his own counsel. At the conclusion of such examination by the opposite party, it is then within the discretion of the court as to whether to allow such party to be questioned by his own counsel.

We cannot say, from the evidence presented in this case, that the trial judge abused his discretion in denying the defendants the right to re-examine the defendant McCarthy. The defendants did call the defendant McCarthy to stand in their case in chief, less than two hours after he had been excused as an adverse witness, and completed their examination of him that

same day. Furthermore, no claim is made that the defendants were not, in their examination of him in their case in chief, permitted to examine him fully on matters covered in his examination as an adverse witness.

■ 4. The defendants contend that the verdict of $15,195 is excessive and was prompted by passion and prejudice.

■ The amount of damages in this type of action is submitted first to the sound discretion of the jury, and next to the discretion of the judge of the trial court, who, in ruling upon the motion for a new trial, may consider the evidence anew, determine the facts anew, and set aside or modify the verdict if it is not just. Sullivan v. City of Butte, 87 Mont. 98, 285 P. 184; Dahlin v. Rice Truck Lines, 137 Mont. 430, 352 P.2d 801.

■ On appeal, the jury's verdict will be set aside if the appellate court, after an examination of the entire record, finds that in fixing the damages the jury was actuated by passion and prejudice. Hollenback v. Stone & Webster Eng. Corp., 46 Mont. 559, 129 P. 1058; Hinton v. Peterson, 118 Mont. 574, 169 P.2d 333.

However, neither the amount of the verdict, nor anything else in the record, convinces us that the jury was actuated, in reaching its verdict, by passion or prejudice.

We then come to the question whether or not the verdict is excessive.

■ In the case of Hollenback v. Stone & Webster Eng. Corp., supra (1913), where action was brought by a mother for the wrongful death of her nineteen-year-old son, this court held that a verdict of $18,000 was not excessive. And, in the case of Autio v. Miller, 92 Mont. 150, 11 P.2d 1039 (1932), where damages were sought by a mother for the death of her eight-year-old son killed by an automobile, this court held that a verdict of $15,000 was not excessive.

Taking into consideration the prior decisions of this court, decided at a time when the purchasing power of money was

substantially higher than what it is today, and also considering the decedent's age, health, life expectancy, and the value of the personal services the plaintiff might reasonably have received from the decedent, we do not find that the amount allowed by the court is excessive.

5. The defendants contend that the trial court committed prejudicial error in failing to give a requested instruction on "unavoidable accident," which read as follows:

"You are instructed that an accident which is caused by an absence of exceptional foresight, skill, or care, which the law does not expect of the ordinary prudent man, is characterized as an unavoidable accident. If you find in this case that the accident which caused the injuries and death of Mark Wyant was unavoidable insofar as the defendants are concerned, then your verdict must be for the defendants."

The proffered instruction is simply another way of urging that a defendant is not liable if he was not negligent. In this case, the jury was fully and correctly instructed on the general rules of liability for negligence. The court gave the following instructions:

"You are instructed that the mere fact that an accident occurred is no proof that the injury was caused by the negligence of the defendants, or that the defendants were negligent, but the fact of such negligence must be established by proof of acts of omission or commission on the part of the defendants, as alleged in plaintiff's complaint, which would constitute negligence as defined to you in these instructions, and without which the accident would not have occurred."

"You are instructed that the plaintiff need prove only one of the alleged acts of negligence, or alleged omissions to act, in order to recover in this action; providing, however, that such an act of negligence or omission to act was

the *proximate cause* of the injuries, if any, to the plaintiff.'' Emphasis supplied.

''The Jury are instructed that in order for the plaintiff to recover, he must prove negligence on the part of the defendants at the time of the collision, by affirmative evidence, which must show more than a probability of a negligent act, that a verdict cannot be founded upon mere conjecture, and that there must be affirmative and preponderating proof that the injury to the plaintiff, Mark Wyant, would not have occurred, except for the negligence of the defendants.''

The court also instructed the jury that it should not award damages against the defendants if it found that the defendant, Charles F. McCarthy, Jr., was free from fault and was not careless or negligent, and that the burden to prove that the defendant McCarthy was negligent and that such negligence, if proved, was a proximate cause of the accident, was on the plaintiff. In addition, the court gave the following instructions:

''You are instructed that an operator of a vehicle is not an insurer for the safety of children. He is not responsible for instance, if, with his vehicle under proper control, a child deliberately runs or walks into the path of his vehicle, or into the vehicle itself, under circumstances where the operator of the vehicle could not, through the exercise of the required degree of care, have avoided the child.''

''You are instructed that if the injury and accident involved in this case was due to the sudden, unforeseen act of the minor child, Mark Wyant, and the defendant, Charles McCarthy, Jr., did not know, or did not have reason to anticipate, that the minor child was going to suddenly run into the street, as claimed by the said defendant, then the plaintiff in this case cannot recover under the circumstances. In other words, the law does not impose any duty

on a person to guard against sudden, unforeseen, and not reasonably to be anticipated, acts of another.''

It is clear from the foregoing, therefore, that the jury was fully instructed that the defendants were not liable if the defendant McCarthy was not negligent, or if negligent, his negligence was not the proximate cause of the accident. All the elements of the defendants' liability were covered by the trial court's instructions. In the case of Jaeger v. Chapman, 95 Cal. App.2d 520, 523, 213 P.2d 404, 406, it is said:

''* * * While it would not have been error to have given such an instruction [on unavoidable accident], it was not error to refuse to give it where all elements of defendant's liability were covered by other instructions. The defendant is not entitled to have his defense over-emphasized and cannot complain that his defense is not stated in a particular way, as long as the defense is adequately and fairly covered.''

In quoting instructions heretofore we do not necessarily mean to approve the wording or contents thereof; their purpose is to show that the defendants received many of their own offered instructions on their theory of the case.

In view of the other instructions given, no error was committed in the trial court's refusal to give the proffered instruction.

6. The defendants next contend that the trial court committed prejudicial and reversible error by giving an instruction on contributory negligence when the issue of contributory negligence could not and did not arise under the evidence.

The jury were instructed as follows:

''You are instructed that a child under the age of seven years is incapable of contributory negligence, and therefore, any evidence tending to show that plaintiff's deceased son, Mark Eric Wyant, was contributorily negligent should be completely disregarded.''

It is true that there was no issue of contributory negligence in this case. However, although the above-quoted instruction may not have a place in this case, its presence will not constitute reversible error, unless it appears to have been prejudicial to the substantial rights of the defendants. (See 5A C.J.S. Appeal & Error § 1764, p. 1204.)

We do not see where injury resulted to the defendants by the giving of the above-quoted instruction. The instruction was correct as an abstract statement of the law and the jury were advised, by other instructions of the trial court, of the essentiality of a finding that the defendant, Charles F. McCarthy, Jr., was negligent and that such negligence was the direct cause of Mark Eric Wyant's death. We fail to see wherein the jury was misled.

7. Lastly, the defendants contend that the trial court committed "prejudicial and reversible error in giving an instruction on the doctrine of last clear chance." The court instructed the jury as follows:

"You are instructed that, even though the injured party, through his own negligence, placed himself in a position of peril, he may recover, if the one who injured him discovers, or by the exercise of ordinary care could have discovered him, in time to have avoided the injury. The defendant would not be relieved of liability by reason of the fact that he did not see him, but the law holds him to the responsibility of seeing what he could have seen by keeping a reasonably vigilant and proper lookout. You are instructed that the mere fact that a child runs in front of a moving motor vehicle so suddenly that the driver had no notice of danger does not necessarily relieve a defendant from liability. There still remains the question of whether the negligent driving of the automobile made it impossible for the driver to avoid the accident after seeing the child, or when, by the exercise of reasonable care, such driver could have seen the child in time to avoid the injury; there being a

greater degree of watchfulness and care required of automobile drivers as to children than adults.''

It is argued that this instruction is erroneous because there was no evidence upon which to submit the issue of negligence under the doctrine of last clear chance.

This is a case where an instruction on the doctrine of last clear chance is not allowable for the reason that contributory negligence must be presupposed in order to make the doctrine applicable. Therefore, the question is whether the jury put such a construction on the instruction above-quoted, considered with all the other instructions as a whole as to affect the substantial rights of the defendants.

In Tanner v. Smith, 97 Mont. 229, 237, 33 P.2d 547, 550, it is said:

"* * * It is elementary that 'instructions must be viewed as a whole where error in giving and refusing certain of them is relied on for a reversal of the judgment.' Scott v. Waggoner, 48 Mont. 536, 139 P. 454, L.R.A. 1916C, 491; Cannon v. Lewis, 18 Mont. 402, 45 P. 572.''

The instruction complained of, when read in conjunction with all the other instructions given by the court, fairly presented the case to the jury and could not possibly have misled the jury to the prejudice of the defendants. Under all the evidence in this case, it is not probable that the jury would have rendered any different verdict had the instruction complained of not been given.

The plaintiff, by cross-assignment of error, contends that the trial court erred in striking the award of interest from the date of death. There is no merit in this contention.

The correct rule in this jurisdiction is that interest is not allowable until the exact amount due is ascertained or is ascertainable so that payment or tender could have been made at the time it should have been made. Daly v. Swift & Co., 90 Mont. 52, 300 P. 265, which impliedly overruled Burns v. Eminger, 84 Mont. 397, 411, 276 P. 437. In the instant case,

the amount due the plaintiff for the wrongful death of his minor son, Mark Eric Wyant, was not ascertained (or ascertainable) until after the jury had rendered its verdict. Therefore, interest is allowable only from the date the verdict was rendered. R.C.M.1947, § 93-8622.

We find no reversible error in the record, and the judgment of the district court is affirmed. It is so ordered.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES ADAIR and DOYLE concur.

MR. JUSTICE CASTLES dissenting:

I dissent. The general tenor of the majority opinion seems to be that, admitting there was some error committed, under the facts and circumstances of this case it could not be considered prejudicial and thus reversible. I shall not dwell long with this dissent. I do not approve the Court's ruling on the per diem argument on measuring damages.

Neither can I approve the contradictory instructions given. Particularly the instructions on contributory negligence, or that a child could not be contributorily negligent as a matter of law, and then to give an instruction on the last clear chance doctrine seems to me to be so inconsistent as to require reversal.

I do concur with the majority opinion on the cross assignment of error as to interest allowable. I would go one step further and directly overrule Burns v. Eminger, 84 Mont. 397, 276 P. 437, even though it appears to have been overruled *sub silentio* in Daly v. Swift & Co., 90 Mont. 52, 300 P. 265.